**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| WEEKEND WARRIOR CLOTHING, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>GOOGLE, LLC,<br><br>*Defendant*. | CASE NO.:<br><br>(JUDGE _____ ) |
| **Complaint with Jury Demand** | |

Plaintiff Weekend Warrior Clothing, LLC ("Weekend Warrior" or "Plaintiff") brings this lawsuit against Google, LLC ("Google" or "Defendant"), alleging as follows:

I.   **INTRODUCTION**

1.      In 2018, Daniel and Tim Whelan ("the Whelan brothers") quit stable, professional jobs to focus full time on building Weekend Warrior, a fledgling online apparel company that would be run from a small closet "office" located in a friend's warehouse—so small that only one of the brothers could work in the space at any given time. Through only the elbow-grease and creativity invested by its founders, Weekend Warrior grew to become a company selling thousands of t-shirts with annual revenue in the seven figures.

2.      Weekend Warrior exclusively sells its products via its own proprietary website, officialusadrinkingteam.com. Weekend Warrior has never sold its products via third-party sites or other sales channels and has never licensed its products or designs to anyone.

3.      Weekend Warrior's success is based almost entirely on its original, copyrighted, often holiday-based, patriotic, pop-culture and humor-focused designs, which are printed on Weekend Warrior's products. Examples of designs created by Weekend Warrior, and sold by

Weekend Warrior on its apparel, are pictured below. All of Weekend Warrior's copyrighted designs and copyright information can be found in **Exhibit A**.



4.      Weekend Warrior is now confronted with the downside to its growth and popularity. That is, Weekend Warrior's success attracted copycats who steal Weekend Warrior's popular designs to make a quick dollar, selling lower quality infringing goods at a cheaper price point, and leaving the "hassle" of creating original designs that will be well-received by the public to Weekend Warrior.

5.      This intentional infringement of Weekend Warrior's copyrighted designs deprives Weekend Warrior of a large number of sales, lessens the value of Weekend Warrior's copyrighted designs, and stunts the company's growth.

6.      But the intentional infringers would not be nearly as effective at stealing Weekend Warrior's intellectual property without an intermediary that accepts substantial funds to advertise and promote the infringing goods. That intermediary is one of the largest, most well-known companies in the world—Google.

7.      Although Google is primarily known as the world's leading search engine, it is also the world's largest advertising agency. Like an advertising agency that owns or has rights to nearly all of the billboards in town, Google owns all of the ad space on its site. Google monetizes the ad

space by selling it to individuals and companies, large and small. None of this is problematic (as far as intellectual property law goes), unless Google is selling the ad space to known intellectual property infringers. Unfortunately, Google is doing so at a massive scale.

8. In Weekend Warrior's experience, Google assists infringers by accepting payment for premium online real estate such that when a consumer searches for a Weekend Warrior design, the consumer is first confronted with a cheaper knockoff instead. More specifically, Google—via its Shopping Ads program—accepts payment from the infringers in exchange for displaying the infringing goods at the top of search result pages in the "Shopping Ad" section of the search result page.

9. Below is an example of some infringing goods being depicted in the Google "Shopping Ad" section where a consumer searches for a "bad day to be a beer shirt". As the screenshot depicts, not only do the Google Shopping Ads depict exact copies of copyrighted Weekend Warrior designs, but the effect of the Shopping Ads program is to push down in the search results the authentic Weekend Warrior site—i.e., officialusadrinkingteam.com.



10. Google's premium placement of displays of infringing goods has at least two negative practical effects on Weekend Warrior's business: (1) some consumers who would have purchased copyrighted products from their rightful seller—Weekend Warrior—buy the cheaper knockoffs that they first see through Google instead; and (2) some consumers will never visit the Weekend Warrior website at all because consumers stop at the "Shopping Ads" section and never reach Weekend Warrior's authentic website, thus never discovering Weekend Warrior and never becoming loyal Weekend Warrior customers.

11. Weekend Warrior attempted to get Google to take down infringing "Shopping Ads" through a multitude of DMCA takedown notices. Those notices were ignored, and the copyright infringement persisted despite Google's knowledge of the specific instances of copyright

infringement that it was facilitating and profiting from.

12.     Indeed, in Weekend Warrior's experience, despite dozens of DMCA notifications (and dozens more follow-up communications), Google has failed to stop copyright infringement of Weekend Warrior's works in its Shopping Ads program. Based on this pattern and practice—as well as the vast amounts of revenue Google makes from its Shopping Ads program—there is no reasonable explanation other than that Google knowingly and deliberately refuses to stop copyright infringement in its Shopping Ads program, and thus Google's purported compliance with the DMCA is a sham.

## II.     PARTIES

13.     Weekend Warrior is an LLC with its principal place of business in Cincinnati, Ohio.

14.     Plaintiff is informed and believes, and thereon alleges, that Google, LLC is a Delaware limited liability company with its principal place of business in Mountain View, California.

## III.     JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1338 because the action arises under the federal Copyright Act. *See* 17 U.S.C. §§ 101, *et seq*.

16.     Venue in this district is proper under 28 U.S.C. § 1391 because Plaintiff maintains its principal place of business and resides here, and suffered injury here. Further, upon information and belief, certain of the infringing goods described in this complaint were sold to customers in this district. Accordingly, a substantial portion of the events and omissions giving rise to this action occurred within this district.

17.     This Court has personal jurisdiction over Google because Google infringed the intellectual property owned by Plaintiff, intentionally directing the conduct described herein, knowing that the effects would be felt by Plaintiff in this judicial district, and upon information and belief, regularly markets and sells its Sponsored Ads, including the Sponsored Ads at issue in this case, to customers in this judicial district.

18.     Google transacts business in Ohio and/or contracts to supply services in Ohio, and Weekend Warrior's claims arise from or relate to those transactions. Google derives considerable revenue from ads purchased in and broadcast to Ohio, and expected or reasonably should have expected its conduct to have consequences in Ohio.

## IV.     GENERAL ALLEGATIONS

### A.     Weekend Warrior is an apparel company that creates original designs for use on its products.

19.     Weekend Warrior is an apparel company run by the Whelan brothers, who both resigned from professional jobs in 2018 to focus their efforts on the company. As noted above, the company began in a borrowed closet "office" space, with only enough room for one of the Whelan brothers to work at a time.

20.     In approximately 2022, Weekend Warrior began to focus on selling t-shirts emblazoned with this company's original designs. The success of Weekend Warrior was largely tied to customers' reception to those creative designs.

21.     Weekend Warrior's designs have been well-received by the consuming public, allowing Weekend Warrior to grow from a fledgling two-man "side-hustle" to a real business. In this regard, many of the Weekend Warrior Designs quickly became popular after their release, and Weekend Warrior has grown to sell thousands of t-shirts per year, with sales in the seven figures.

### B.     Weekend Warrior obtains copyright registrations to protect its valuable, original designs.

22.     Weekend Warrior's success is inextricably tied to its original, creative designs. To protect this valuable intellectual property, Weekend Warrior obtained copyright registrations for many of its works.

23.     While not exhaustive of all the original designs for which Weekend Warrior owns copyrights, to date, Weekend Warrior has obtained copyright registrations for the following works (collectively, the "WW Designs"):

i.     Tits McGee Irish Pub (Reg. No. VA 2-351-548)

3037326                                              Page **6** of **17**

ii.     Bad Day to be a Cerveza (Reg. No. VA 2-352-053)

iii.    Pat McCrotch Irish Pub (Reg. No. VA 2-352-055)

iv.     Griddy Taco (Reg. No. VA 2-352-064)

v.      Griddy Cerveza (Reg. No. VA 2-352-062)

vi.     Uncle Sam's American Lager (Reg. No. VA 2-357-232)

vii.    USA Drinking Team Mascot (Reg. No. VA 2-357-233)

viii.   Real American - Uncle Sam (Reg. No. VA 2-358-836)

ix.     Ameri-CAN Eagle (Reg. No. VA 2-358-838)

x.      Meri-CAN Eagle (Reg. No. VA 2-358-949)

xi.     Uncle Sam Griddy (Reg. No. VA 2-358-971)

xii.    USA Jam - Uncle Sam/Merican Eagle (Reg. No. VA 2-358-950)

xiii.   USA Jam - Washington/Lincoln (Reg. No. VA 2-358-834)

xiv.    Ameri-CAN V2 (Reg. No. VA 2-360-244)

xv.     Bald Eagle Griddy (Reg. No. VA 2-360-414)

xvi.    Ameri-CAW (Reg. No. VA 2-360-415)

xvii.   Bad Day to be a Beer (Reg. No. VA 2-340-675)

xviii.  Bad Day to be a Beer – Christmas Edition (Reg. No. VA 2-373-658)

xix.    Bad day to be a Bier (Reg. No. VA 2-373-594)

xx.     Bad day to be a Turkey (Reg. No. VA 2-373-975)

xxi.    Boo Bees and Beer (Reg. No. VA 2-374-001)

xxii.   Can't get Hungover (Reg. No. VA 2-373-946)

xxiii.  Do you feel lucky (Reg. No. VA 2-373-368)

xxiv.   Enjoy Beer (Reg. No. VA 2-374-114)

xxv.    FrankenSTEIN (Reg. No. VA 2-373-666)

xxvi.   Get Smashed (Reg. No. VA 2-373-958)

xxvii.  Greened Out (Reg. No. VA 2-373-959)

xxviii. Hope they serve beer in hell (Reg. No. VA 2-373-988)

xxix.   I Want Brew (Reg. No. VA 2-374-121)

xxx.    Make Mullets Great Again (Reg. No. VA 2-374-116)

xxxi.   Most Interesting Pumpkin (Reg. No. VA 2-373-957)

xxxii.  Poor Day to be a Pilsner (Reg. No. VA 2-373-977)

xxxiii. Protect the Charms (Reg. No. VA 2-373-955)

xxxiv.  Skeleton Griddy (Reg. No. VA 2-373-667)

xxxv.   The Grim Rizzer (Reg. No. VA 2-374-118)

xxxvi.  Where the Horrors at? (Reg. No. VA 2-374-120)

xxxvii. Morning Wood Lumber (Reg. No. VA 2-375-960)

xxxviii. Papa Woody Plumbing (Reg. No. VA 2-375-959)

xxxix.  Master Bait (Reg. No. VA 2-376-862)

xl.     Shut up Liver (Reg. No. VA 2-376-259)

xli.    Enjoy Beer – Ugly Sweater (Reg. No. VA 2-378-403)

xlii.   Leprechaun Griddy (Reg. No. VA 2-350-096)

xliii.  Camel Tow (Reg. No. VA 2-381-900)

xliv.   Thicc Santa (Reg. No. VA 2-381-900)

xlv.    Merry Rizz-Mas (Reg. No. VA 2-381-897)

xlvi.   Santa Griddy (Reg. No. VA 2-381-897)

xlvii.  St. PatRIZZ Day (Reg. No. VA-2-389-860)

xlviii. King of the Kill (Reg. No. VA 2-453-167)

xlix.   USA JAM – Trump/Biden (Reg. No. VA2-405-798)

l.      American Dream Team (Reg. No. 2-414-049)

li.     Down Goes Liver (Reg. No. 2-406-000)

lii.     Free Ride (Reg. No. 2-414-054)

liii.    Pat McGroin (Reg. No. VA 2-405-800)

liv.    Uncle Sam in the 90s (Reg. No. VA 2-414-053)

lv.    Uncle Sam Racing (Reg. No. VA 2-414-052)

lvi.    A Bad Day of Fishing (Reg. No. VA 2-406-022)

lvii.    Get Your Balls Wet (Reg. No. VA 2-430-652)

lviii.   Rizz the Season (Reg. No. 2-430-649)

lix.    George Rizzington (pending)

lx.    Abe-Rizz-Ham Lincoln (pending)

24.    The WW Designs and their copyright registrations are attached as Exhibit A.[1]

**C.    <u>Google knowingly engages in direct and contributory infringement of Weekend Warrior's copyrights</u>.**

25.    Upon information and belief, Google generates more than $200 billion in advertising revenue on an annual basis. Upon information and belief, the vast majority of that revenue is generated through its Shopping Ads program.

26.    Under the Google Shopping Ads program, merchants pay Google to feature their products in Google-sponsored advertisements that are generally at the top of the search result page, which provides the merchants a competitive advantage over competitors who are lower on the page.

27.    As Google itself explains, "[s]hopping ads use your existing Merchant Center product data (not keywords) to decide how and where to show your ads. The product data you

---

[1] The following designs were still pending registration at the time of filing of this First Amended Complaint: George Rizzington, Abe-Rizz-Ham Lincoln. Plaintiff does not assert direct or indirect copyright infringement claims as to these designs at this time, but reserves the right to amend its Complaint once those registrations are approved.

submit through Merchant Center contains details about the products you sell. We'll use these details when we match a user's search to your ads, making sure to show the most relevant products."[2]

28.     Google touts the benefits of its Shopping Ads program over other ad formats, including "better qualified leads"—e.g., "when Sally does a Google search for 'fish bowl,' she might see Shopping ads from merchants selling fish bowls. She can tell which fish bowl fits her taste just by looking at the picture. She can also quickly see where the fish bowl fits her budget by looking at the price. This means that by the time Sally clicks on the ad, she has a good sense of the product and its cost, which puts her further down the purchasing funnel compared to the average web user."[3]

29.     As mentioned above, upon information and belief, Google generates hundreds of billions of dollars a year from the Shopping Ads program. It does so, at least in part, by charging merchants every time a customer clicks on one of its Shopping Ads.

30.     Weekend Warrior discovered substantial quantities of exact copies of the WW Designs being displayed in the Shopping Ads section of the Google search results page.

31.     Weekend Warrior notified Google, via Google's instructions for submitting takedown notifications under the Digital Millenium Copyright Act (DMCA), for each of the infringing displays.

32.     In certain instances, Google ignored Weekend Warrior's DMCA notifications, which resulted in Weekend Warrior following up with Google on multiple occasions in order to convince Google to take action pursuant to the notifications.

33.     In other instances, Google stated that it would remove the infringing displays, but never actually removed them.

34.     For example, below is a screenshot from January 23, 2024 displaying exact or near-

---

[2] https://support.google.com/google-ads/answer/2454022?hl=en (last visited September 8, 2025).
[3] *Id.*

exact copies of Weekend Warrior's "Taco Griddy" copyrighted design in the Google Shopping
Ads display.



35.    Below is a copy of a February 6, 2024 email from Google stating that Google would remove the infringing displays from its search results globally.



36.    Below is a screenshot from April 11, 2024—i.e., more than two months after the purported removal of the infringing displays—showing the same infringing displays on Google's Shopping Ads.



37.     Attached hereto as **Exhibit B** are true and correct copies of screenshots showing Google professing that it will remove infringing advertisements, and failing to do so. These are mere examples.

38.     Without Google, many of the websites selling infringing Weekend Warrior knockoffs would be otherwise unknown to potential Weekend Warrior customers. But Google's broadcasting of such infringements at the top of its search results pages leads to those infringements often outranking Weekend Warrior's legitimate products when someone searches for a Weekend Warrior design.

39.     And Google does not merely link to third-party infringement; instead, Google

displays Weekend Warrior's copyrighted images without permission. This display devalues Weekend Warrior's art by giving the false impression that the links displayed on Google are shown with Weekend Warrior's authorization. But Weekend Warrior has never authorized Google to display its designs as being associated with any website other than Weekend Warrior's own

40.    Indeed, in Weekend Warrior's experience, despite dozens of DMCA notifications (and dozens more follow-up communications), Google has not once stopped copyright infringement in its Shopping Ads program. Based on this pattern and practice—as well as the vast amounts of revenue Google makes from its Shopping Ads program—there is no reasonable explanation other than that Google knowingly and deliberately refuses to stop copyright infringement in its Shopping Ads program, and thus Google's purported compliance with the DMCA is a sham.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

41.    Weekend Warrior re-alleges and incorporates herein by reference each and every allegation set forth above.

42.    Weekend Warrior has complied in all respects with the copyright laws of the United States, 17 U.S.C. §101 et seq., and has secured the exclusive rights and privileges in and to the original expression in the WW Designs that have been duly registered with the U.S. Copyright Office. All of Weekend Warrior's copyrighted designs and copyright information can be found in **Exhibit A**.

43.    Google had access to Weekend Warrior's copyrighted works as established by, among other things, (a) the widespread availability of the WW Designs for sale on Weekend Warrior's products, (b) the striking similarity between the expression used on the infringing goods and the expression in Weekend Warrior's copyrights, and (c) Weekend Warrior's notification to Google that it was infringing Weekend Warrior's copyrights by maintaining infringing advertisements of Weekend Warrior's copyrights on its webpages.

44.    Google infringes Weekend Warrior's copyrights by advertising, marketing,

displaying, offering for sale, and profiting from products incorporating protectable expression taken from Weekend Warrior's copyrights, without Weekend Warrior's permission.

45.     Google infringed Weekend Warrior's copyrights willfully. Specifically, Weekend Warrior notified Google of infringing ad results displayed by Google. Despite knowing that it was hosting and displaying infringing advertisements, Google declined to remove the infringing advertisements identified by Weekend Warrior.

46.     By failing to respond to Weekend Warrior's infringement notices, and continuing to host Weekend Warrior infringements on its search results pages, Google facilitates infringement by the third-parties advertising the infringements through Google.

47.     Weekend Warrior is entitled to actual damages and Google's profits, in an amount to be proven at trial.

48.     Alternatively, Weekend Warrior is entitled to statutory damages for willful copyright infringement in an amount no less than $150,000.00 per copyright.

49.     Google's acts have caused, and will continue to cause, irreparable harm to Weekend Warrior unless restrained by this Court. Weekend Warrior has no adequate remedy at law. Accordingly, Weekend Warrior is entitled to an order enjoining and restraining Google and all those acting in concert with Google, during the pendency of this action and permanently thereafter, from manufacturing, distributing, importing, exporting, marketing, offering for sale, or selling products with copies or substantially similar copies of Weekend Warrior's copyrighted designs.

## SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement)

50.     Weekend Warrior re-alleges and incorporates herein by reference each and every allegation set forth above.

51.     Google has been and continues to be aware of—and has contributed and continues to contribute to—the infringement of Weekend Warrior's copyrights on its site.

52.     In this regard, and as described above, Weekend Warrior sent numerous takedown requests to Google concerning products for sale that infringe the WW Designs, and Google failed

to remove the infringing designs. Google thus has actual knowledge of its infringement.

53.    Alternatively, Google has remained willfully blind to the infringement of Weekend Warrior's copyrights on its website and on the products it manufactures and sells to the end consumer.

54.    Weekend Warrior has been damaged by Google and Google has profited from Google's contributory copyright infringement in the form of advertising revenue received in relation to the infringing advertisements.

55.    To remedy Google's contributory copyright infringement, Weekend Warrior is entitled to actual damages, wrongful profits, statutory damages, attorney's fees and costs, and interest.

## **PRAYER FOR RELIEF**

56.    WHEREFORE, Plaintiff prays for relief against Defendant as follows:

57.    For preliminary and permanent injunctions enjoining and restraining Defendant, its agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with Defendant, from designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates designs substantially similar to Weekend Warrior's copyrights;

58.    For an order requiring the destruction of all marketing, advertising, or promotional materials depicting Defendant's infringing products;

59.    For an accounting of all profits obtained by Defendant that is attributable to the display of infringing designs and an order that Defendant hold all such profits in a constructive trust for the benefit of Plaintiff;

60.    For an award to Plaintiff of all profits earned by Defendant from their infringing acts;

61.    For compensatory damages according to proof;

62.    For statutory damages of no less than $150,000.00 per eligible registered copyright;

63.    For pre- and post-judgment interest on all damages awarded by this Court;

64.     For reasonable attorney's fees and costs of suit incurred herein; and

65.     For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

66.     Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully submitted,

*/ s / Gary F. Franke*
Gary F. Franke (Ohio Bar No. 0029793)
William M. Bristol (Ohio Bar No. 0074005)
Gary F. Franke Co., LPA
201 E. Fifth Street, Suite 910
Cincinnati, Ohio 45202
Tel: (513) 564-9222
gff@garyfrankelaw.com

Keith J. Wesley (*pro hac vice* forthcoming)
George B. A. Laiolo (*pro hac vice* forthcoming)
Daniel A. Contreras (*pro hac vice* forthcoming)
ELLIS GEORGE LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Tel. (310) 274-7100
kwesley@ellisgeorge.com
mvenezia@ellisgeorge.com
glaiolo@ellisgeorge.com

*Attorneys for Plaintiff*