### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| WEEKEND WARRIOR CLOTHING, LLC, | |
| *Plaintiff*, | Case No. 1:25-cv-00668-DRC |
| v. | The Honorable Douglas R. Cole |
| GOOGLE, LLC, | **ORAL ARGUMENT REQUESTED** |
| *Defendant*. | |

### DEFENDANT GOOGLE LLC'S MOTION TO DISMISS
### OR IN THE ALTERNATIVE TO STAY

Defendant Google LLC moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff Weekend Warrior Clothing, LLC's Complaint (ECF No. 1) for failure to state a claim upon which relief may be granted.  In the alternative, Google moves to stay this case pending the U.S. Supreme Court's decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 145 S. Ct. 2841 (2025).  The grounds for the motion are set forth in the accompanying memorandum in support.

Dated: November 24, 2025             Respectfully submitted,

*/s/ Anthony L. Osterlund*

Anthony L. Osterlund (71086)
 *Trial Attorney*
Alexander X. Shadley (0100801)
**VORYS, SATER, SEYMOUR
& PEASE LLP**
Great American Tower
301 East Fourth Street
Suite 3500
Cincinnati, OH 45202
(513) 723-4000
 *alosterlund@vorys.com*
 *axshadley@vorys.com*

Sarang V. Damle (*pro hac vice* pending)
Sarah A. Tomkowiak (*pro hac vice* pending)
Roberto J. Borgert (*pro hac vice* pending)
Brent T.F. Murphy (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
 *sy.damle@lw.com*
 *sarah.tomkowiak@lw.com*
 *roberto.borgert@lw.com*
 *brent.murphy@lw.com*

*Attorneys for Defendant Google LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................2

I.     Google's Shopping Platform and Shopping Ads ................................................2

II.    Weekend Warrior and the Procedural History of This Litigation.......................4

ARGUMENT ....................................................................................................................5

I.     The Court Should Dismiss Weekend Warrior's Complaint ................................5

     A.    Weekend Warrior Fails to State a Claim for Direct Copyright Infringement..........6
          1.    Weekend Warrior Fails to Allege That Google "Displayed" Any Infringing "Copy" Under the Server Test...................................................7
          2.    Weekend Warrior Fails to Allege That Google Engaged in Any Volitional Conduct That Caused the Alleged Infringement .......................9
     B.    Weekend Warrior Fails to State a Claim for Contributory Copyright Infringement.....................................................................................................13

II.    To the Extent the Court Does Not Dismiss Weekend Warrior's Claims, It Should Stay This Case Pending the Supreme Court's Decision in *Cox* .......................................17

     A.    A Stay Will Simplify the Issues and Reduce the Burdens for the Parties and the Court......................................................................................................18
     B.    Weekend Warrior Will Not Be Prejudiced ..........................................................19

CONCLUSION...............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABKCO Music, Inc. v. Sagan*,
 50 F.4th 309 (2d Cir. 2022) ............................................................................10, 12

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................5

*Augenstein v. Coldwell Banker Real Estate, LLC*,
 2012 WL 1677239 (S.D. Ohio May 14, 2012) .......................................................19

*Average Joe's Ent. Grp., LLC v. Soundcloud, Ltd.*,
 2018 WL 6582829 (M.D. Tenn. Oct. 17, 2018) ..................................................6, 12

*Beckles v. United States*,
 580 U.S. 256 (2017)...............................................................................................19

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).................................................................................................5

*Beydoun v. Holder*,
 2015 WL 631948 (E.D. Mich. Feb. 13, 2015) .......................................................20

*Biden v. Nebraska*,
 143 S. Ct. 2355 (2023)............................................................................................19

*Biden v. Nebraska*,
 600 U.S. 477 (2023).................................................................................................19

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
 371 F.3d 883 (6th Cir. 2004) ...........................................................................13, 16

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
 376 F.3d 615 (6th Cir. 2004) ...................................................................................6

*Cartoon Network LP v. CSC Holdings, Inc.*,
 536 F.3d 121 (2d Cir. 2008)....................................................................................10

*Clover Ridge Holdings, LLC v. Rice Drilling D, LLC*,
 2025 WL 2609838 (S.D. Ohio Sept. 9, 2025) .......................................................19

*Concord Music Grp., Inc. v. X Corp.*,
 2024 WL 945325 (M.D. Tenn. Mar. 5, 2024) ..........................................................9

ii

*CoStar Group, Inc. v. LoopNet, Inc.*,
    373 F.3d 544 (4th Cir. 2004) ........................................................................11

*Cox Communications, Inc. v. Sony Music Entertainment*,
    145 S. Ct. 2841 (2025) .............................................................................1, 17

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
    93 F.4th 222 (4th Cir. 2024) ........................................................................18

*DSM Desotech, Inc. v. Momentive Specialty Chems., Inc.*,
    2017 WL 11634919 (S.D. Ohio Feb. 6, 2017) .............................................19

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
    844 F.3d 79 (2d Cir. 2016) ..........................................................................13

*Facebook, Inc. v. Duguid*,
    592 U.S. 395 (2021) .....................................................................................19

*Flava Works, Inc. v. Gunter*,
    689 F.3d 754 (7th Cir. 2012) ....................................................................7, 13

*Flowers, Inc. v. Springhill Floral & Gift Supply Co.*,
    2025 WL 3003931 (N.D. Ohio Oct. 27, 2025) ............................................11

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    586 U.S. 296 (2019) .......................................................................................5

*Free State of Bavaria v. Ohio State Univ.*,
    2023 WL 3060197 (S.D. Ohio Apr. 24, 2023) ............................................20

*Freeman v. Quicken Loans, Inc.*,
    566 U.S. 624 (2012) .....................................................................................19

*FTC v. E.M.A. Nationwide, Inc.*,
    767 F.3d 611 (6th Cir. 2014) ........................................................................17

*Glass v. Portfolio Recovery Assocs., LLC*,
    2021 WL 6332771 (E.D. Tenn. Feb. 12, 2021) ...........................................18

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) .....................................................................................13

*Goldman v. Breitbart News Network, LLC*,
    302 F. Supp. 3d 585 (S.D.N.Y. 2018) ...........................................................8

*Great Lakes Steel v. Deggendorf*,
    716 F.2d 1101 (6th Cir. 1983) ........................................................................5

*Griffith v. Menard, Inc.*,
    2018 WL 1907348 (S.D. Ohio Apr. 23, 2018) ............................................................18, 19

*Hunley v. Instagram, LLC*,
    73 F.4th 1060 (9th Cir. 2023) ............................................................................................7, 9

*Kalem Co. v. Harper Bros.*,
    222 U.S. 55 (1911) ..................................................................................................................13

*Kirby Devs., LLC v. XPO Glob. Forwarding, Inc.*,
    2018 WL 6075071 (S.D. Ohio Nov. 20, 2018)......................................................................18

*Kremer v. Reddit, Inc.*,
    2022 WL 3702092 (M.D. Tenn. Aug. 26, 2022), *adopted*, 2022 WL 4241273
    (M.D. Tenn. Sep. 14, 2022) ...................................................................................................12

*Latta v. U.S. Dep't of Educ.*,
    653 F. Supp. 3d 435 (S.D. Ohio 2023) .................................................................................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004) ...................................................................................................6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005).............................................................................................13, 14, 15, 16

*Michael v. Ghee*,
    325 F. Supp. 2d 829 (N.D. Ohio 2004)..................................................................................18

*N.B. by Bray v. HealthSource of Ohio, Inc.*,
    2024 WL 476959 (S.D. Ohio Jan. 24, 2024) .........................................................................19

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .................................................................................................7

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ...............................................................................................6, 9

*RJ Control Consultants, Inc. v. Multiject, LLC*,
    100 F.4th 659 (6th Cir. 2024) ..................................................................................................6

*Sanna v. Delta Airlines*,
    132 F.R.D. 47 (N.D. Ohio 1990) ...........................................................................................19

*Shank v. Givesurance Ins. Servs., Inc.*,
    2022 WL 561596 (S.D. Ohio Feb. 24, 2022).........................................................................19

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025)..........................................................................................13, 15, 16, 17

*Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*,
    689 F.3d 29 (1st Cir. 2012) ........................................................................................7

*Solo v. United Parcel Serv. Co.*,
    819 F.3d 788 (6th Cir. 2016) .....................................................................................6

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)....................................................................................13, 14, 16

*Stokes v. Brinor, Inc.*,
    683 F. Supp. 3d 713 (N.D. Ohio 2023)......................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................................6

*Tomelleri v. SunFrog, LLC*,
    2023 WL 10676154 (E.D. Mich. Oct. 30, 2023) .....................................................11

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) .....................................................................................5

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023)...........................................................................................15, 17

*United States v. Ross*,
    2016 WL 4408878 (S.D. Ohio Aug. 19, 2016).......................................................19

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ...................................................................................16

*Wilkinson v. Dotson*,
    544 U.S. 74 (2005)...................................................................................................18

*Zappa v. Rykodisc, Inc.*,
    819 F. Supp. 2d 307 (S.D.N.Y. 2011).....................................................................10

## STATUTES

17 U.S.C.
    § 101.........................................................................................................................7
    § 102(a)(5) ................................................................................................................6
    § 106(5) ....................................................................................................................6
    § 411(a) ....................................................................................................................5
    § 501(a) ....................................................................................................................6
    § 504(c) ..................................................................................................................17
    § 512.........................................................................................................................4

## BRIEFS

Pet. Br., *Cox Communications, Inc. v. Sony Music Entertainment*,
2025 WL 3093473 (U.S. Aug. 29, 2025)................................................................18

U.S. Br., *Cox Communications, Inc. v. Sony Music Entertainment*,
2025 WL 2616625 (U.S. Sep. 5, 2025)..................................................................18

## OTHER AUTHORITIES

*About Landing Page Requirements*, Google Merchant Center Help, https://
support.google.com/merchants/answer/4752265 (last visited Nov. 24, 2025)..........................3

*About Shopping Ads*, Google Ads Help, https://support.google.com/google-
ads/answer/2454022 (last visited Nov. 24, 2025)..................................................2, 3

*Argument Calendar for the Session Beginning December 1, 2025*, Sup. Ct.,
https://www.supremecourt.gov/oral_arguments/argument_calendars/Monthly
ArgumentCalDecember2025.pdf (last visited Nov. 24, 2025) ................................................20

*Google Shopping Ads Policy Center*, Google Transparency Center,
https://transparency.google/intl/en_us/our-policies/product-terms/google-
shopping/ (last visited Nov. 24, 2025) ................................................................3, 16

*How Google Merchant Center Works*, Google Merchant Center,
https://www.google.com/retail/how-google-merchant-center-works/ (last
visited Nov. 24, 2025)................................................................2

*How Google Search Works*, Google Search, https://www.google.com/
search/howsearchworks/how-search-works/ (last visited Nov. 24, 2025)................................2

*Image Link [Image_Link]*, Google Merchant Center Help,
https://support.google.com/merchants/answer/6324350 (last visited Nov. 24,
2025) ................................................................3, 8

*Product Data Specification*, Google Merchant Center Help,
https://support.google.com/merchants/answer/7052112 (last visited Nov. 24,
2025) ................................................................2, 3

5 William F. Patry, *Patry on Copyright* § 15:7 (rev. ed. Sep. 2025)..........................................7, 8

## DEFENDANT GOOGLE LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY

## INTRODUCTION

Google's Shopping platform is used by hundreds of thousands of third-party merchants to advertise millions of products to Google users. Although Google operates that platform, it does not determine the contents of Shopping advertisements ("Shopping Ads"), directly sell advertised products, or share in revenues from any sales. The Shopping platform is unquestionably designed—and in the vast majority of instances is in fact used—for lawful purposes. Plaintiff Weekend Warrior Clothing, an apparel designer and retailer, alleges that t-shirts bearing unauthorized versions of its copyrighted designs have been advertised by third-party merchants on Google Shopping.

Although Weekend Warrior seeks to hold Google responsible, on the facts Weekend Warrior alleges the law places liability solely with those who actually advertise and sell the infringing products. The claims against Google fail as a matter of law: the complaint describes third-party merchant advertising populated by merchant-provided data, not volitional copying by Google (foreclosing direct liability); and the complaint does not plausibly allege that Google engaged in any affirmative conduct with the purpose of promoting others' acts of copyright infringement (foreclosing contributory liability). The Court should dismiss both claims.

In the alternative, the Court should stay this case pending the Supreme Court's decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 145 S. Ct. 2841 (2025), which is set for oral argument on December 1, 2025, and will consider the standard both for contributory copyright infringement liability and for willfulness. Because Weekend Warrior claims Google is a willful contributory copyright infringer, that decision will directly bear on this litigation, warranting a temporary stay.

**BACKGROUND**

## I.  GOOGLE'S SHOPPING PLATFORM AND SHOPPING ADS

According to Weekend Warrior, although "Google is primarily known as the world's leading search engine, it is also the world's largest advertising agency."  Complaint ("Compl."), ECF No. 1 at 2 (¶ 7).[1]  Google Search indexes hundreds of billions of webpages and other information, and in response to a user's search, Google automatically sorts through that index to find the most relevant material.  *See How Google Search Works*, Google Search, https://www.google.com/search/howsearchworks/how-search-works/ (last visited Nov. 24, 2025).  Depending on the user's query, results may also include Google Shopping Ads.  Compl. at 3-4, 9-10 (¶¶ 8, 10, 26-29).

To run ads on Google, sellers and businesses (which Google calls "merchants") use two connected Google products: Merchant Center to supply product data, and Google Ads to run campaigns.  *Id.* at 9-10 (¶¶ 26-29).  Merchants add product data to their Merchant Center account, and then "Shopping ads use [the merchant's] existing Merchant Center product data (not keywords) to decide how and where to show [the merchant's] ads."  *Id.* at 9-10 (¶ 27) (quoting *About Shopping Ads*, Google Ads Help, https://support.google.com/google-ads/answer/2454022); *see also How Google Merchant Center Works*, Google Merchant Center, https://www.google.com/retail/how-google-merchant-center-works/ (last visited Nov. 24, 2025).

The information that powers Shopping Ads comes from merchants, not Google.  *See Product Data Specification*, Google Merchant Center Help, https://support.google.com/merchants/answer/7052112 (last visited Nov. 24, 2025).  For example, once a merchant creates a Merchant Center account (and accepts Google's related terms of service), it can add business

---

[1] Pincites for ECF-filed documents are to PageID number throughout.

information, upload information about products from its website, and link to its e-commerce store. *Id*. Merchants provide product information including title, price, availability, and brand. *Id*. Merchants also supply an "image link" for advertised products—an embedded text link (e.g., "https://www.example.com/image1.jpg") that will use HTML instructions to direct a user's browser to retrieve a copy of the image of the merchant's product at the merchant's third-party website and display that image on the user's desktop as part of a Shopping Ad. *See Image Link*, Google Merchant Center Help, https://support.google.com/merchants/answer/6324350 (last visited Nov. 24, 2025).

After providing this necessary information, a merchant can establish "campaigns" and "bid[s]" for its products. *See About Shopping Ads*, Google Ads Help, https://support.google.com/ google-ads/answer/2454022 (last visited Nov. 24, 2025). Google's system uses the campaign and bid information along with the product data submitted in Merchant Center to automatically "match[] a user's search to [a merchant's] ads, making sure to show the most relevant products." *See id.*; Compl. at 9-10 (¶¶ 26-29). When a user clicks on a merchant's Shopping Ad displayed in response to the user's search, the product link supplied by the merchant and included in the Shopping Ad takes the user to the product's landing page on the merchant's third-party website. *See About Landing Page Requirements*, Google Merchant Center Help, https:// support.google.com/merchants/answer/4752265 (last visited Nov. 24, 2025). Any product purchase takes place on the merchant's website. Payment is made, and orders are fulfilled, through the merchant, not Google.

Consistent with Google's terms of service, which merchants must accept when creating a Merchant Center account, Google can and does remove paid Shopping Ads that violate its policies. *See Google Shopping Ads Policy Center*, Google Transparency Center,

https://transparency.google/intl/en_us/our-policies/product-terms/google-shopping/ (last visited Nov. 24, 2025). Moreover, consistent with the Digital Millennium Copyright Act ("DMCA"),[2] Google maintains a notice-and-takedown process for removing Google Shopping Ads for products that infringe intellectual property rights. *See* Compl. at 10, 13, 15-16 (¶¶ 31, 37, 45-46, 52).

## II. WEEKEND WARRIOR AND THE PROCEDURAL HISTORY OF THIS LITIGATION

Weekend Warrior describes itself as "a fledgling online apparel company" started by brothers Daniel and Tim Whelan in 2018. *Id*. at 1, 6 (¶¶ 1, 19, 21). Weekend Warrior alleges it now sells "thousands" of t-shirts with "seven figures" in annual revenue through its website, "officialusadrinkingteam.com." *Id*. at 1 (¶¶ 1, 2). Weekend Warrior describes its t-shirt designs as "often holiday-based, patriotic, pop-culture and humor-focused." *Id*. at 1-2, 6 (¶¶ 3, 20-21). Representative designs that encapsulate the brand include messages like "Bad Day to be a Beer," "Boo Bees and Beer," and "Down Goes Liver." *Id*. at 7-8 (¶ 23(xvii), (xxi), (li)).

Weekend Warrior alleges that bad actors have sought to capitalize on Weekend Warrior's success by selling unauthorized copies of its t-shirt designs. *Id*. at 3-4, 9-10, 13 (¶¶ 8-10, 26-30, 38). It alleges that some of these pirate sellers advertise their infringing t-shirts for sale via Google Shopping Ads. *Id*. Weekend Warrior alleges that it has reported many of these pirate sellers to Google via takedown requests submitted pursuant to Google's DMCA policy. *Id*. at 10-12, 14 (¶¶ 31-36, 40). Weekend Warrior criticizes Google for failing (in Weekend Warrior's opinion) to act expeditiously to remove allegedly infringing Shopping Ads in response to Weekend Warrior's notices. *E.g.*, *id*. at 10-13 (¶¶ 34-37). Significantly, Weekend Warrior does not allege that it has ever attempted to sue these pirate sellers directly for copyright infringement.

---

[2] *See generally* 17 U.S.C. § 512.

On September 11, 2025, Weekend Warrior abruptly sued Google. The complaint asserts infringement of 58 copyrighted designs. *Id.* at 6-9 (¶ 24(i)-(lviii)); *see also id.* Ex. A.[3] And it asserts two theories of liability: (1) direct copyright infringement, which seeks to hold Google itself liable for original acts of alleged infringement, and (2) contributory copyright infringement, which seeks to hold Google liable for the direct infringement allegedly committed by pirate sellers. *Id.* at 14-16 (¶¶ 41-49, 50-55).

## ARGUMENT

## I.  THE COURT SHOULD DISMISS WEEKEND WARRIOR'S COMPLAINT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the complaint's factual allegations as true and draws reasonable inferences in the nonmovant's favor. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). But it need not accept unwarranted factual inferences, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. In resolving the motion, the court may also consider "documents incorporated into the complaint by reference, and matters of

---

[3] Weekend Warrior also identifies two pending applications for copyright registrations, which it says it "does not assert" currently as works in suit but "reserves the right to amend its Complaint once those registrations are approved." Compl. at 9 & n.1 (¶ 23(lix)-(lx)). Weekend Warrior is right that it cannot sue for infringement on the basis of those pending applications. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019); 17 U.S.C. § 411(a). Google reserves the right to oppose any proposed amendment to add these works, assuming the Copyright Office approves their registration, including on the ground that claims premised on these works would fail for the same reasons explained in this motion.

which a court may take judicial notice." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### A.    Weekend Warrior Fails to State a Claim for Direct Copyright Infringement

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression," including "pictorial, graphic, and sculptural works."  17 U.S.C. § 102(a)(5).  The Act grants authors of protected works a number of "exclusive rights," including the rights to, among other things, "reproduce," "distribute," and "display" their works.  *Id.* § 106.  "Liability for direct infringement arises from the violation of any one of the[se] exclusive rights."  *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) (citing 17 U.S.C. § 501(a)).  To plead a claim for direct infringement, a plaintiff must plausibly allege (1) its "ownership of a valid copyright" in the asserted work, and (2) "that the defendant copied protectable elements of the work."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); *accord RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 667 (6th Cir. 2024).  Because direct infringement involves copying *by the defendant*, courts require "the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant"—that is, "*direct* liability must be premised on conduct that can reasonably be described as the *direct cause* of the infringement."  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (citation omitted); *accord Stokes v. Brinor, Inc.*, 683 F. Supp. 3d 713, 723 (N.D. Ohio 2023); *Average Joe's Ent. Grp., LLC v. Soundcloud, Ltd.*, 2018 WL 6582829, at *2-3 (M.D. Tenn. Oct. 17, 2018).

Weekend Warrior attempts to plead a narrow theory of direct liability: that Google itself "displays" Weekend Warrior's copyrighted designs in Shopping Ads and thereby violates Weekend Warrior's exclusive public-display right.  *See* 17 U.S.C. 106(5).  The factual premise is that thumbnail images shown in sponsored Shopping Ads at the top of Google's results pages are

affirmative "displays" by Google, and that Google profits from those displays through its advertising model.  Compl. at 3-5, 10, 13-15 (¶¶ 8-11, 30, 39, 44).  That theory fails for two independent reasons.  *First*, under the well-established "server test," Weekend Warrior does not plausibly allege that Google "displayed" any infringing copy of Weekend Warrior's works.  *Second*, Weekend Warrior's allegations do not establish that Google (as opposed to third-party merchants) engaged in any "volitional conduct" that "caused" any prima facie act of infringement—a necessary element for direct liability.

> **1.** ***Weekend Warrior Fails to Allege That Google "Displayed" Any Infringing "Copy" Under the Server Test***

The Copyright Act defines "display[ing] a work" as "show[ing] a copy of it, either directly or by means of a film, slide, television image, or any other device or process."  17 U.S.C. § 101. "A copy means either an original or a duplicate that is fixed, and fixation requires embodiment in a perceivable format."  *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1069 (9th Cir. 2023) (citing 17 U.S.C. § 101).  In the context of computer displays of allegedly infringing online images, the Ninth Circuit held in its seminal decision in *Perfect 10, Inc. v. Amazon.com, Inc.*, that an online service provider "displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory."  508 F.3d 1146, 1160 (9th Cir. 2007). In other words, a service "displays" an image only if the image is hosted or stored on the service's own servers such that the *service* transmits a *copy* to users' browsers.  *Id*.  If, on the other hand, the service's own servers do not ever store a copy of the allegedly infringing image, there has been no infringing display, because any display by statutory definition first requires the existence of a copy.  *Id*.  This has become known as the "server test," and has been widely adopted as authoritative.  *See, e.g.*, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012); *Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 55 (1st Cir. 2012); 5 William

F. Patry, *Patry on Copyright* § 15:7 (rev. ed. Sep. 2025) (noting "[m]ost other courts have followed this helpful approach").[4]

The question, then, is whether Weekend Warrior can allege that Google hosts a copy of any of Weekend Warrior's copyrighted images on its own servers, such that *Google* can be found to have infringed Weekend Warrior's "display" right. The complaint's allegations and judicially noticeable documents make clear that Weekend Warrior cannot. The thumbnail images shown in Google Shopping—including those in which Weekend Warrior's designs appeared—are displayed through the process of embedding links. The process works like this: When a Google Shopping merchant wants to create an ad, the merchant provides the relevant information about the product in its Merchant Center account. *See* Compl. at 9-10 (¶¶ 27-28). To include an image of the product in the ad, the merchant supplies a "URL for [its] main product image with the image link [image_link] attribute," which "points to an image" of the product on the merchant's site, and "[t]his image appears to potential customers in ads and free listings for [the merchant's] product." *Image Link [Image_Link]*, Google Merchant Center Help, https://support.google.com/merchants/answer/6324350 (last visited Nov. 24, 2025). In other words, a merchant supplies Google with a *text link* that corresponds to the location of a copy of an image (e.g., "https://www.example.com/image1.jpg")—not a *copy* of the image itself. Then, when Shopping displays a merchant's ad in response to a user's search, the product image is displayed to the user via HTML instructions to the user's browser, which follows those instructions to retrieve a copy of the image from the link supplied by the merchant and display the image directly in the user's

---

[4] A small minority of district court judges have rejected the server test. *See, e.g.*, *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 590-93 (S.D.N.Y. 2018). That view is an outlier, and has been criticized as inconsistent with the Act's text. *See* 5 *Patry on Copyright* § 15:7.

browser—without a copy of the image ever being hosted by Google. *See Perfect 10,* 508 F.3d at 1155 (describing this process).

As the Ninth Circuit held in *Perfect 10* (in a case rejecting a virtually identical claim that Google should be liable for displaying infringing images via Google Image Search), that process does not result in any infringement *by Google* of the "display" right. *Id.* at 1160-62. "Providing these HTML instructions," the court explained, "is not equivalent to showing a copy." *Id.* at 1161. That is because "the HTML instructions are lines of text, not a photographic image," and the "HTML instructions do not themselves cause infringing images to appear on the user's computer screen," but rather "merely give[] the address of the image to the user's browser." *Id.* "It is [the interaction between the HTML, the user's browser, and the user's computer] that causes an infringing image to appear on the user's computer screen." *Id.* And while "Google may facilitate the user's access to [the] infringing images," that "does not constitute direct infringement of the copyright owner's display rights." *Id.* The Ninth Circuit recently reaffirmed that holding in *Hunley v. Instagram*, 73 F.4th at 1069.

The server test resolves this case. And there are no allegations Weekend Warrior could make that would change that result.

### 2. Weekend Warrior Fails to Allege That Google Engaged in Any Volitional Conduct That Caused the Alleged Infringement

Weekend Warrior's allegations are deficient for the separate and independent reason that they do not plead that Google engaged in any "volitional conduct" that caused the alleged infringement.

To plead volitional conduct, "the plaintiff must establish that the defendant actually *did something* that could, itself, be considered infringement." *Concord Music Grp., Inc. v. X Corp.*, 2024 WL 945325, at *6 (M.D. Tenn. Mar. 5, 2024). In other words, direct liability attaches only

9

to "the person who actually presses the button" that "causes" the infringing copying or distribution. *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321-22 (2d Cir. 2022) (first quoting *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008), then quoting *Zappa v. Rykodisc, Inc.*, 819 F. Supp. 2d 307, 315 (S.D.N.Y. 2011)).

By contrast, courts widely recognize that a passive platform, which merely operates through automated processes or provides neutral tools that may be misused by third parties, does not engage in "volitional conduct" sufficient to create direct infringement liability. For example, in *Cartoon Network LP v. CSC Holdings, Inc.*, various copyright owners sued Cablevision, a cable company, for direct copyright infringement on the theory that Cablevision's remote DVR system infringed the owners' copyrights. 536 F.3d at 123-24. The district court granted summary judgment to the copyright owners, but the Second Circuit reversed, concluding that the copyright owners could not establish the necessary volitional conduct *by Cablevision*. *Id.* at 133. As the Second Circuit explained, it was *customers* "who actually presse[d] the button to make the recording [who] supplie[d] the necessary element of volition, not the person who manufactures, maintains, or, if distinct from the operator, owns the machine." *Id.* at 131. And the court rejected the analogy to "a copy shop that makes course packs for college professors" as "flawed," because "a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct." *Id.* at 131-32. Because *users* were responsible for "making" the allegedly infringing copies, while Cablevision provided nothing more than an "automatic[]" and passive system, the copyright owners failed to establish that Cablevision engaged in volitional conduct *Id.* at 131-33.

Likewise, in *CoStar Group, Inc. v. LoopNet, Inc.*, the Fourth Circuit rejected a direct infringement claim against the provider of a website for hosting online real estate listings, concluding that it was nothing more than that of a "conduit[] from or to would-be copiers and ha[d] no interest in the copy itself."  373 F.3d 544, 551 (4th Cir. 2004).  "If the Copyright Act does not hold the owner of the copying machine liable as a direct infringer when its customer copies infringing material without knowledge of the owner, the ISP should not be found liable as a direct infringer when its facility is used by a subscriber to violate a copyright without intervening conduct of the ISP."  *Id.* at 550.

Courts enforce the same requirement at the pleading stage.  For example, in *Tomelleri v. SunFrog, LLC*, the court dismissed a direct infringement claim against a website that operated an online marketplace for third-party goods, but was not alleged to *itself* be involved in "design[ing], manufactur[ing], or even select[ing] the products on the[] website."  2023 WL 10676154, at *7 (E.D. Mich. Oct. 30, 2023), *adopted*, 721 F. Supp. 3d 566 (E.D. Mich. 2024).  "[W]ithout more," the court explained, "simply alleging that [the plaintiff's] illustrations appeared on the Defendants' website does not imply that the Defendants were directly . . . liable for the infringing works."  *Id.* at *6.  In reaching that result, the court contrasted on the one hand "websites [that] simply facilitate online marketplaces—think of Amazon, Facebook Marketplace, or eBay," which "do not sell their own products" and instead "act as agents who connect suppliers with interested consumers," with "'print on demand' companies," on the other hand, that "act[] as manufacturers in some respects" and "manufacture[] a unit of the seller's product and deliver[] it to the buyer" when a customer places an order. *Id.* The former do not typically face direct liability; the latter do.  *See Flowers, Inc. v. Springhill Floral & Gift Supply Co.*, 2025 WL 3003931, at *5 (N.D. Ohio Oct. 27, 2025) (contrasting the defendants' affirmative acts of "purchas[ing], receiv[ing], market[ing], and

distribut[ing] Products bearing the [plaintiff's] Designs" with "platform" cases in which "a third party used a [platform's] product or service" to infringe but "the [platform]'s involvement . . . was passive and largely automated"); *see also Kremer v. Reddit, Inc.*, 2022 WL 3702092, at *7 (M.D. Tenn. Aug. 26, 2022) (rejecting direct infringement claim against Reddit without allegations that Reddit—rather than users—copied the plaintiff's works), *adopted*, 2022 WL 4241273 (M.D. Tenn. Sep. 14, 2022); *Average Joe's Ent. Grp.*, 2018 WL 6582829, at *3-4 (rejecting direct infringement claim for lack of volitional conduct by the SoundCloud music streaming platform).

Here, Weekend Warrior's allegations plead at most that Google—like Cablevision in *Cartoon Network*, and like the websites in *CoStar* and *Tomelleri*—is a passive provider of an automated system that can be used by consumers for a multitude of purposes, some of which may be infringing. Weekend Warrior alleges, for example, that all of the information for the allegedly infringing advertisements—including the allegedly infringing images themselves—is chosen and supplied by third-party merchants, not Google. Compl. at 9-10 (¶¶ 26-28, 31-33). It concedes that the allegedly infringing ads are created automatically in response to user queries and merchant bids—without any review or selection by Google, and containing only the information merchants supply and based on criteria merchants select. *Id.* And it acknowledges that the allegedly infringing ads themselves link (through links supplied by merchants, not Google) to the merchants' websites where any sale or transaction ultimately takes place. *Id.* Google's role, in Weekend Warrior's own words, is arm's length, passive, and indifferent—and could not be further from the role of the person "who actually presses the button" to cause the alleged infringement. *ABKCO*, 50 F.4th at 321-22. At most, Weekend Warrior alleges that Google's automated systems facilitate *other users'* display of allegedly infringing material. Those allegations are insufficient as a matter of law to establish volitional conduct by Google.

**B.** **Weekend Warrior Fails to State a Claim for Contributory Copyright Infringement**

Weekend Warrior's theory that Google should be held liable secondarily for pirate sellers' alleged copyright infringement fares no better.

"The Copyright Act does not expressly render anyone liable for infringement committed by another." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984). But the Supreme Court has inferred secondary copyright liability from common-law principles and by analogy to explicit secondary liability provisions in patent law. *See id.* at 434-42. As relevant here, the Supreme Court has held that a defendant commits "contributory" copyright infringement "by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see also Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004).

Contributory infringement is "accomplice" liability, *Kalem Co. v. Harper Bros.*, 222 U.S. 55, 62 (1911), which courts uniformly agree is equivalent to aiding and abetting, *see, e.g.*, *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 764 (2011) (defining "contributory infringement" as "aiding and abetting of direct infringement by another party"); *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 100 (2d Cir. 2016); *Flava Works*, 689 F.3d at 755. A defendant is not liable for aiding and abetting—and, thus, for contributory infringement—unless he both (1) knew of another's wrong, and (2) actively "participate[d] in" that wrong "'as in something that he wishes to bring about' and 'seek[s] by his action to make it succeed.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291-92 (2025) (citation omitted); s*ee also Grokster*, 545 U.S. at 930.

For example, in *Sony Corp. of America v. Universal City Studios, Inc.*, copyright owners sued Sony for contributory infringement for selling the "Betamax," a video-recording device that

customers could use to record movies or television shows, on the theory that Sony had "sold [the Betamax] with constructive knowledge of the fact that [its] customers may use that equipment to make unauthorized copies of copyrighted material." 464 U.S. at 435-36, 439. The Supreme Court rejected that claim. As the Court explained, when a defendant has created and offered a general-use product that has "substantial noninfringing uses"—that is, it "is widely used for legitimate, unobjectionable purposes"—the mere knowledge that some customers may use the product to infringe is not enough to make the defendant liable as a contributory infringer. *Id.* at 440-42. Instead, if a contributory infringement claim is going to be based on the sale of a product alone, a plaintiff must be able to show that the product is "uniquely suited" or "'especially' made" to further infringement. *Id.* at 436, 441-42.

The Supreme Court reaffirmed those principles in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* In *Grokster*, copyright owners sued a file-sharing platform designed and marketed to promote music piracy. 545 U.S. at 922-24, 926. In general, the Court observed, contributory infringement "doctrine absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses, and limits liability to instances of more acute fault than the mere understanding that some of one's products will be misused." *Id.* at 932-33 (citing *Sony*, 464 U.S. at 442). Only a defendant who "distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other *affirmative steps taken to foster infringement*, is liable for the resulting acts of infringement of third parties." *Id.* at 936-37 (emphasis added). In other words, "a court would be unable to find contributory . . . liability merely based on a failure to take affirmative steps to *prevent infringement*." *Id.* at 934, 939 n.12 (emphasis added). In *Grokster*, the Court concluded that the company's whole "business model[]" depended on its users committing infringement: it explicitly marketed itself as "the next Napster," encouraged users to

14

share copyrighted material for free, and even prompted users to download specific copyrighted songs. *Id.* at 922, 924, 926. Unlike the Betamax in *Sony*, for which the act of selling was at worst "equivocal"—revealing nothing about Sony's purpose to further copyright infringement—the file-sharing service in *Grokster* was "good for nothing else" but infringement. *Id.* at 932. As a result, "there [wa]s no injustice in presuming or imputing intent to infringe" to Grokster, and contributory liability was therefore appropriate. *Id.*

Most recently, in a pair of cases applying the same common-law aiding-and-abetting principles from which contributory infringement was created, the Supreme Court has reaffirmed that secondary liability requires a plaintiff to prove that the defendant engaged in affirmative conduct with the intent to further another's misconduct. In *Twitter, Inc. v. Taamneh*, the plaintiffs sued various internet platforms (including Twitter, YouTube, and Facebook) on the theory that those platforms were liable for continuing to provide services to customers they allegedly "knew" were promoting terrorism. 598 U.S. 471, 481-82, 498 (2023). The Court rejected that claim, explaining that merely providing access to users on "arm's length, passive, and largely indifferent" terms, without evidence that the platforms took any action to encourage users' misconduct, could not establish aiding and abetting. *Id.* at 498-500. As the Court emphasized, "a contrary holding would effectively hold any sort of communication provider liable for any sort of wrongdoing merely for knowing that the wrongdoers were using its services and failing to stop them." *Id.* at 503. Such a result would "run roughshod over the typical limits on tort liability." *Id.* Likewise, last term in *Smith & Wesson*, the Court turned away another claim of aiding and abetting liability against gun manufacturers, premised on the theory that those manufacturers had failed to "cut off the flow of firearms" to known bad actors. 605 U.S. at 289. Far from alleging "the kind of 'conscious . . . and culpable participation in another's wrongdoing' needed to make out an aiding-

and-abetting charge," the plaintiffs had asserted nothing more than "nonfeasance"—i.e., a failure to act to stop another's misconduct.  *Id.* at 291-92 (citation omitted).  Knowledge that others may misuse one's products, without more, does not make one an accomplice.

Applying those principles here, Weekend Warrior's complaint does not plausibly allege that Google is a contributory copyright infringer.  Even assuming, for purposes of this motion, that Weekend Warrior's allegations are sufficient to establish Google's knowledge of specific acts of direct infringement at the pleading stage, *cf. Bridgeport Music*, 371 F.3d at 889, its contributory infringement claim still fails because its allegations do not establish that Google induced or materially contributed to those direct infringements.  *Id.*

Like the Betamax in *Sony*, Google's Shopping platform is capable of (and overwhelmingly used for) lawful, noninfringing uses—i.e., the advertising of legitimate products by legitimate sellers.  *See* 464 U.S. at 442.  Weekend Warrior does not (and could not) allege otherwise.  Google has never marketed Shopping as a platform for infringing products, nor has it "'especially' made" Shopping such that it is "good for nothing else but infringement."  *Sony*, 464 U.S. at 436; *Grokster*, 545 U.S. at 931-33.  To the contrary, Weekend Warrior's own allegations make clear that Google *prohibits* misuse of the Shopping platform for infringement, and operates a robust rights management system to help intellectual property owners protect their rights.  *See, e.g.*, Compl. at 4-5, 10, 13, 15-16 (¶¶ 11, 31, 37, 45-46, 52) (referencing Google's DMCA takedown processes); *Google Shopping Ads Policy Center*, Google Transparency Center, https://transparency.google/intl/en_us/our-policies/product-terms/google-shopping/ (last visited Nov. 24, 2025).  In other words, Google did nothing more than make a "generally applicable tool[] . . . for users"; "no [one] could conclude [Google] distributed its product with the object of promoting its use to infringe copyright."  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (citation omitted).

That leaves Weekend Warrior, at most, with allegations of the same kind of "nonfeasance"—i.e., failure to stop misconduct—that the Supreme Court rejected as a basis for aiding-and-abetting liability in *Sony*, *Grokster*, *Twitter*, and *Smith & Wesson*. As the Supreme Court explained in *Smith & Wesson*, when a company "at most allegedly stood back and watched" with "know[ledge] that 'some bad actors' are taking 'advantage' of its products for criminal purposes, it does not aid and abet." 605 U.S. at 293 (quoting *Twitter*, 598 U.S. at 503). Or as the Court put it in *Twitter*, there is "no duty that would require defendants or other communication-providing services" (like Google) "to terminate customers after discovering that the customers were using the service for illicit ends." 598 U.S. at 501. "And that is so even if the company could adopt measures to reduce their users' downstream crimes." *Smith & Wesson*, 605 U.S. at 293. The same reasoning forecloses Weekend Warrior's claim against Google.

## II.    TO THE EXTENT THE COURT DOES NOT DISMISS WEEKEND WARRIOR'S CLAIMS, IT SHOULD STAY THIS CASE PENDING THE SUPREME COURT'S DECISION IN *COX*

To the extent the Court does not grant Google's motion to dismiss, it should stay any claims remaining in this case pending the U.S. Supreme Court's decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 145 S. Ct. 2841 (2025), which will consider the standards for (i) contributory copyright infringement and (ii) willfulness under 17 U.S.C. § 504(c).

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," and the decision to stay "ordinarily rests with the sound discretion of the District Court." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626-27 (6th Cir. 2014) (citation omitted). When exercising that discretion, courts typically consider (1) the need for a stay; (2) the stage of the litigation; (3) whether the nonmoving party will be "unduly prejudiced or tactically disadvantaged"; (4) whether a stay will simplify the issues; and (5) whether a stay will reduce the

burden of litigation on the parties and the court. *See, e.g.*, *Kirby Devs., LLC v. XPO Glob. Forwarding, Inc.*, 2018 WL 6075071, at *2 (S.D. Ohio Nov. 20, 2018). The moving party bears the burden of showing a stay is warranted. *Id.* Here, the relevant factors all point in the direction of a stay.

### A. A Stay Will Simplify the Issues and Reduce the Burdens for the Parties and the Court

The Supreme Court's decision in *Cox* will have a significant, and potentially dispositive, impact on the course of this litigation. Weekend Warrior's theory of Google's liability is identical to the plaintiffs' theory in *Cox*: Weekend Warrior says Google is liable for willful contributory copyright infringement because it continued to provide merchants with access to Google's Shopping platform after receiving notices of infringement. The Fourth Circuit accepted that theory of liability when offered by the plaintiffs in *Cox*. *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 227, 233-37 (4th Cir. 2024). But as Cox and the United States as amicus have explained, that theory is wrong. *See generally* Pet. Br., 2025 WL 3093473 (U.S. Aug. 29, 2025); U.S. Br., 2025 WL 2616625 (U.S. Sep. 5, 2025); *see also supra* § I.B. If the Supreme Court ultimately agrees with Cox and the United States and rejects the Fourth Circuit's rule on these issues, that would fatally undermine Weekend Warrior's theories of contributory liability and willfulness here.

As courts routinely observe, the fact that a "case on appeal to the Supreme Court may have a dispositive effect on the instant case . . . weighs heavily in favor of granting the stay." *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (granting stay pending *Wilkinson v. Dotson*, 544 U.S. 74 (2005)); *see also Griffith v. Menard, Inc.*, 2018 WL 1907348, at *3 (S.D. Ohio Apr. 23, 2018) ("[Because] the Supreme Court's decision in *Epic Systems* [*Corp. v. Lewis*, 584 U.S. 497 (2018),] is very likely to resolve an issue that is central to this case, the Court is persuaded that a stay is warranted."); *Glass v. Portfolio Recovery Assocs., LLC*, 2021 WL 6332771, at *4

18

(E.D. Tenn. Feb. 12, 2021) (granting stay pending *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), because it would "ha[ve] the potential to 'be dispositive of an entire claim or defense to a cause of action as a whole'" (citation omitted)).

But even if *Cox* is not dispositive of Weekend Warrior's contributory infringement or willfulness claim, "a Supreme Court decision will, no doubt, greatly aid this Court and the parties." *Sanna v. Delta Airlines*, 132 F.R.D. 47, 49 (N.D. Ohio 1990); *accord N.B. by Bray v. HealthSource of Ohio, Inc.*, 2024 WL 476959, at *2 (S.D. Ohio Jan. 24, 2024) (similar). And, at a minimum, granting "a stay will promote judicial economy and prevent potentially inconsistent outcomes." *Latta v. U.S. Dep't of Educ.*, 653 F. Supp. 3d 435, 440 (S.D. Ohio 2023) (granting stay pending *Biden v. Nebraska*, 143 S. Ct. 2355 (2023)); *see also DSM Desotech, Inc. v. Momentive Specialty Chems., Inc.*, 2017 WL 11634919, at *3 (S.D. Ohio Feb. 6, 2017) (explaining granting stay "minimizes the risk of inconsistent results" when there are parallel proceedings).

Little wonder, given this discussion, that courts in this District regularly grant stays in similar circumstances.[5] This Court should do the same.

### B. Weekend Warrior Will Not Be Prejudiced

On the other side of the ledger, there is no risk of prejudice to Weekend Warrior. "[T]his case is still in its early stages"—a procedural posture that favors a stay. *Clover Ridge Holdings, LLC v. Rice Drilling D, LLC*, 2025 WL 2609838, at *2 (S.D. Ohio Sept. 9, 2025). Meanwhile, the delay from waiting for the Supreme Court's decision is likely to be modest. The Court has already

---

[5] *See, e.g.*, *Latta v. U.S. Dep't of Educ.*, 653 F. Supp. 3d 435, 441 (S.D. Ohio 2023) (stay pending *Biden v. Nebraska*, 600 U.S. 477 (2023)); *Shank v. Givesurance Ins. Servs., Inc.*, 2022 WL 561596, at *2 (S.D. Ohio Feb. 24, 2022) (referencing stay pending *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021)); *Griffith v. Menard, Inc.*, 2018 WL 1907348, at *4 (S.D. Ohio Apr. 23, 2018) (stay pending *Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018)); *United States v. Ross*, 2016 WL 4408878, at *2 (S.D. Ohio Aug. 19, 2016) (stay pending *Beckles v. United States*, 580 U.S. 256 (2017)); *Augenstein v. Coldwell Banker Real Estate, LLC*, 2012 WL 1677239, at *2 (S.D. Ohio May 14, 2012) (stay pending *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624 (2012)).

set the case for argument on December 1, with a decision to be issued in the spring.  *See Argument Calendar for the Session Beginning December 1, 2025*, Sup. Ct., https://www.supremecourt.gov/oral_arguments/argument_calendars/MonthlyArgumentCalDecember2025.pdf (last visited Nov. 24, 2025).  The fact that any delay is likely only to be for a few short months favors a stay.  *See, e.g.*, *Beydoun v. Holder*, 2015 WL 631948, at *4 (E.D. Mich. Feb. 13, 2015).  Regardless, the Supreme Court's eventual decision will shape the key issues presented in this case, including questions related to the scope of relevant fact and expert discovery.  That, too, supports a stay. *See, e.g.*, *Free State of Bavaria v. Ohio State Univ.*, 2023 WL 3060197, at *4 (S.D. Ohio Apr. 24, 2023) (stay appropriate even if not dispositive because waiting for a decision "will streamline discovery by clarifying the underlying issues in dispute").

## CONCLUSION

The Court should dismiss Weekend Warrior's complaint with prejudice.  To the extent the Court does not dismiss any or all of Weekend Warrior's claims, it should stay this case pending the Supreme Court's decision in *Cox*.

Dated:  November 24, 2025                     Respectfully submitted,

                                              */s/ Anthony L. Osterlund*
                                              Anthony L. Osterlund (71086)
                                                *Trial Attorney*
                                              Alexander X. Shadley (0100801)
                                              **VORYS, SATER, SEYMOUR
                                                & PEASE LLP**
                                              Great American Tower
                                              301 East Fourth Street
                                              Suite 3500
                                              Cincinnati, OH 45202
                                              (513) 723-4000
                                                *alosterlund@vorys.com*
                                                *axshadley@vorys.com*

                                              Sarang V. Damle (*pro hac vice* pending)
                                              Sarah A. Tomkowiak (*pro hac vice* pending)
                                              Roberto J. Borgert (*pro hac vice* pending)
                                              Brent T.F. Murphy (*pro hac vice* pending)
                                              **LATHAM & WATKINS LLP**
                                              555 Eleventh Street, NW
                                              Suite 1000
                                              Washington, DC 20004
                                              (202) 637-2200
                                                *sy.damle@lw.com*
                                                *sarah.tomkowiak@lw.com*
                                                *roberto.borgert@lw.com*
                                                *brent.murphy@lw.com*

                                              *Attorneys for Defendant Google LLC*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing motion was filed electronically on November 24, 2025.  Notice of this filing will be sent to all parties through the Court's electronic filing system.

/s/ Anthony L. Osterlund
Anthony L. Osterlund