UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WEEKEND WARRIOR CLOTHING, LLC, | Case No.: 1:25-cv-00668-DRC |
| Plaintiff, | |
| | Judge:  Douglas R. Cole |
| v. | Magistrate Judge: Stephanie K. Bowman |
| GOOGLE, LLC, | |
| Defendant. | |

## PLAINTIFF WEEKEND WARRIOR CLOTHING, LLC'S OPPOSITION TO DEFENDANT GOOGLE, LLC'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION .................................................................................................6

II.    LEGAL STANDARD............................................................................................7

III.   ARGUMENT .......................................................................................................8

       A.     WW properly alleges that Google engages in direct copyright
              infringement. ......................................................................................8

             1.    The Court should not adopt the "server test."............................10

             2.    WW's allegations demonstrate volitional conduct. ...................14

       B.     WW properly alleges that Google engaged in contributory copyright
              infringement. ....................................................................................19

IV.   ALTERNATIVELY, THE COURT SHOULD GRANT LEAVE TO AMEND .............23

V.    THE COURT SHOULD NOT STAY THE CASE ........................................................23

VI.   CONCLUSION...................................................................................................25

## **TABLE OF AUTHORITIES**

### **CASES**

*Am. Broad. Cos., Inc. v. Aereo, Inc*.,
    573 U.S. 431 (2014)....................................................................................12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................7

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
    342 F.3d 634 (6th Cir. 2003) ..............................................................................23

*Brown v. Bargery*,
    207 F.3d 863 (6th Cir. 2000) ................................................................................7

*Brown v. Chapman*,
    814 F.3d 436 (6th Cir. 2016) ..............................................................................23

*Cartoon Network LP, LLLP v. CSC Holdings, Inc*.,
    536 F.3d 121 (2d Cir. 2008)...........................................................................17, 18

*Cengage Learning, Inc., et al. v. Google, LLC*,
    Case No. 1:24-cv-04274-JLR-BCM (S.D.N.Y. Aug. 22, 2025), ECF No. 191 .....................24

*CoStar Grp., Inc. v. LoopNet, Inc*.,
    373 F.3d 544 (4th Cir. 2004) .....................................................................17, 18, 19

*Cox Communications, Inc. v. Sony Music Entertainment*,
    145 S. Ct. 2841 (2025).........................................................................................24

*Doe v. Michigan State Univ*.,
    989 F.3d 418 (6th Cir. 2021) ................................................................................7

*Dong v. Bd. of Educ. of Rochester Cmty. Schs*.,
    197 F.3d 793 (6th Cir. 1999) ..............................................................................23

*Ellison v. Ford Motor Co*.,
    847 F.2d 297 (6th Cir. 1988) ..............................................................................23

*Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*,
    958 F.3d 532 (6th Cir. 2020) ................................................................................8

*Fitzke v. Shappell*,
    468 F.2d 1072 (6th Cir.1972) ...............................................................................7

*Flowers, Inc. v. Springhill Floral & Gift Supply Co.*,
    2025 WL 3003931 (N.D. Ohio Oct. 27, 2025) ....................................................15

*Goldman v. Breitbart News Network, LLC,*
  302 F. Supp. 3d 585 (S.D.N.Y. 2018)..............................................................11, 13

*Great Bowery v. Best Little Sites,*
  No. 2:21-CV-00567-DBB-JCB, 2024 WL 3416038 (D. Utah July 15, 2024) .......13

*H-D U.S.A., LLC v. SunFrog, LLC,*
  311 F. Supp. 3d 1000 (E.D. Wis. 2018)......................................................................17

*In re Frontier Commc'ns Corp.,*
  658 B.R. 277 (Bankr. S.D.N.Y. 2024) ....................................................21, 22, 23

*Kentucky v. Biden,*
  23 F.4th 585 (6th Cir. 2022) .........................................................................................23

*Kirby Devs., LLC v. XPO Glob. Forwarding, Inc.,*
  No. 2:18-CV-500, 2018 WL 6075071 (S.D. Ohio Nov. 20, 2018) ........................24

*Kohus v. Graco Children's Prods. Inc.,*
  13 F. Supp. 3d 829 (S.D. Ohio 2014) .......................................................................15

*Leader's Inst., LLC v. Jackson,*
  No. 3:14-CV-3572-B, 2017 WL 5629514 (N.D. Tex. Nov. 22, 2017)....................13

*McGucken v. Newsweek LLC,*
  No. 19 CIV. 9617 (KPF), 2022 WL 836786 (S.D.N.Y. Mar. 21, 2022) ...........10, 13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*
  545 U.S. 913 (2005)........................................................................................................22

*Minatsis v. Brown,*
  713 F. Supp. 1056 (S.D. Ohio 1989) ...........................................................................7

*NCR Corp. v. Korala Assocs., Ltd.,*
  512 F.3d 807 (6th Cir. 2008) .................................................................................8, 19

*Nicklen v. Sinclair Broad. Grp., Inc.,*
  551 F. Supp. 3d 188 (S.D.N.Y. 2021)........................................................................14

*Perfect 10, Inc. v. Amazon.com, Inc.*
  508 F.3d 1146 (9th Cir. 2007) ........................................................................12, 13, 14

*Playboy Enters., Inc. v. Russ Hardenburgh, Inc.,*
  982 F. Supp. 503 (N.D. Ohio 1997)............................................................................19

*RJ Control Consultants, Inc. v. Multiject, LLC,*
  100 F.4th 659 (6th Cir. 2024) .......................................................................................8

*Smart v. Ellis Trucking Co.*,
  580 F.2d 215 (6th Cir. 1978) ........................................................................7

*Smith & Wesson v. Estados Unidos Mexicanos*,
  605 U.S. 280 (2025)......................................................................................21

*Sony BMG Music Entm't v. Willis*,
  2008 WL 2120837 (S.D. Ohio May 19, 2008) ............................................15

*Sony Corp. of America v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) and H.R. Rep. 94–1476, 47, 51, 80 (1976) ...............12, 21, 22

*Spanski Enterprises Inc. v. Telewizja Polska SA*,
  883 F.3d 904 (D.C. Cir. 2018) ................................................................15, 16

*Stokes v. Brinor, Inc.*,
  683 F. Supp. 3d 713 (N.D. Ohio 2023)........................................................15

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
  715 F.2d 1327 (9th Cir. 1983) .......................................................................8

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023)................................................................................21, 22

## STATUTES

17 U.S.C. § 101.............................................................................................8, 11, 12

Act. The Copyright Act....................................................................................14

Copyright Act............................................................................................ *passim*

DMCA............................................................................................6, 18, 20, 23

Terrorism Act...................................................................................................21

WW Designs under the Copyright Act ............................................................8

## RULES

Rule 8(a)(2) ........................................................................................................7

Rule 12(b)(6).......................................................................................................7

Rule 15 ..............................................................................................................23

## I.  <u>INTRODUCTION</u>

According to defendant Google, LLC ("Google"), the Google Shopping Ads program is not liable as a matter of law for either direct or secondary copyright infringement even though:  (a) "Google assists infringers by accepting payment for premium online real estate such that when a consumer searches for a Weekend Warrior design, the consumer is first confronted with a cheaper knockoff instead," ECF No. 1 (Compl.), PageID 3 ¶ 8 ; (b) Google has a deliberate pattern and practice of ignoring DMCA notifications from copyright owners, including plaintiff Weekend Warrior Clothing, LLC ("WW") and thus "Google knowingly and deliberately refuses to stop copyright infringement in its Shopping Ads program . . . and thus Google's purported compliance with the DMCA is a sham," *id.* PageID 5 ¶ 12; and (c) Google lies to rights holders like WW by telling them infringing displays will be, but are never, taken down, *id.* PageID 11 ¶¶ 35–36. In other words, according to Google, it can choose (based on the amount of money it receives) where to display infringing works and then ignore and/or deliberately deceive a copyright owner that asks it to remove the infringing work from public display. The Copyright Act—and case law construing the Act—says otherwise.

One final word before proceeding to a more in-depth discussion of the motion: This case is not about Google's traditional search engine function—*i.e.*, "googling" a fact or business or name or the like. This case is about a specific program that Google has created to attempt to monetize its online real estate. To put it another way, this case is not like an absentee park owner that allows anyone—regardless of the content of their art—to display their art in his park. Rather, this case is about a hands-on park owner that accepts money from artists in exchange for giving the artist prime real estate in the park to maximize the number of viewers of the art. Whatever rules apply to Google's general search function are inapplicable to the rules that apply when Google creates and profits from—to the tune of hundreds of billions annually—a program like its

Shopping Ads.

WW has sufficiently alleged violations of the Copyright Act by Google's Shopping Ads program to defeat a motion to dismiss and to allow discovery into the full nature and scope of Google's acts and omissions.

## II. <u>LEGAL STANDARD</u>

In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept "all well-pleaded allegations in the complaint as true,' and 'consider[ ] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Doe v. Michigan State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). In doing so, a court "must apply a liberal construction of the complaint in favor of the party opposing the motion." *Smart v. Ellis Trucking Co.*, 580 F.2d 215, 219 n. 3 (6th Cir. 1978). Under this standard, "a court will indulge all reasonable inferences that might be drawn from the pleading." *Minatsis v. Brown*, 713 F. Supp. 1056, 1059 (S.D. Ohio 1989) (citing *Fitzke v. Shappell*, 468 F.2d 1072, 1076 n. 6 (6th Cir.1972)).

"Dismissal of a complaint for the failure to state a claim on which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). In analyzing the complaint, "the Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail." *Minatsis*, 713 F. Supp. at 1059. A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. Instead, Rule 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

III.     **ARGUMENT**

A.     **WW properly alleges that Google engages in direct copyright infringement.**

A defendant may be held directly liable for copyright infringement if it violates "any one of the exclusive rights of a copyright owner," such as the right to display the copyrighted work. *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008). To prove direct infringement, the claimant must prove: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 667 (6th Cir. 2024). "A plaintiff may demonstrate that original elements of its work were copied through direct or indirect evidence." *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 536 (6th Cir. 2020). Direct evidence exists "where works are so overwhelmingly identical that the possibility of independent creation is precluded." *Twentieth Century-Fox Film Corp. v. MCA, Inc*., 715 F.2d 1327, 1330 (9th Cir. 1983). Plaintiff's complaint satisfies the elements of direct copyright infringement.

Since 2022, WW has been selling t-shirts emblazoned with the company's original designs. ECF No. 1 (Compl.) PageID 6 ¶ 20. WW obtained copyrights for the original designs depicted on its shirts, including those at issue in this case (the "WW Designs"). *Id*. PageID 6–9 ¶¶ 23–24. WW has thus alleged sufficient facts to satisfy the copyright ownership element of copyright infringement. Google does not dispute this.

Nor does Google dispute that WW has adequately pleaded that Google Shopping Ads displays exact copies of the WW Designs under the Copyright Act. Under the Act, a defendant displays a work by "show[ing] a copy of it, either directly or by means of a film, slide, television image, or any other device or process." 17 U.S.C. § 101. WW alleges that Google Shopping Ads depict exact copies of copyrighted WW Designs, and buries the authentic WW website (officialusadrinkingteam.com) beneath numerous websites that illegally sell knock-off products.

ECF No. 1 (Compl.) PageID 3 ¶ 9. This results in would-be buyers being directed to websites that sell knock-off products instead of WW's website. *Id*. PageID 4, 13 ¶¶ 10, 38. Without Google, many of these copyright-infringing websites would be unknown to potential WW customers. *Id*.

A simple glance at the images included in WW's complaint demonstrates that Google displays exact copies of the WW Designs:

**WW Design (*Id*. PageID 1–2 ¶ 3, Ex. A)**



**Google's Infringing Images (*Id*. PageID 10–11 ¶ 34).**



Instead of disputing the sufficiency of WWs' allegations of direct copyright infringement, Google hangs its hat on two arguments: (1) that WW's allegations do not meet the Ninth Circuit's "server test;" and (2) that WW's allegations do not establish any volitional conduct on Google's part. This Court, however, should not apply either the "server test" or "volitional conduct" test, neither of which has been adopted by the Sixth Circuit and both of which are contradicted by the plain language and purposes of the Copyright Act, as well as case law construing the Act. And even if the Court were to require "volitional conduct" by Google, such conduct has been adequately pled.

### 1.     The Court should not adopt the "server test."

The "server test" is not the law in the Sixth Circuit. To date, the undersigned has found no case within the Sixth Circuit that has expressly adopted this test from the Ninth Circuit. Nor does Google cite a single case within the Sixth Circuit that has. Instead, without saying as much, Google asks the Court to adopt the "server test." It should not. The "server test" is a poorly-reasoned test to which, contrary to Google's assertion, courts outside of the Ninth Circuit are growing increasingly hostile. *See McGucken v. Newsweek LLC*, No. 19 CIV. 9617 (KPF), 2022 WL 836786, at *6 (S.D.N.Y. Mar. 21, 2022) ("[T]he server test has not been widely adopted outside of the Ninth Circuit."). This is because the Ninth Circuit's "server test" runs contrary to the text of the Copyright Act and controlling Supreme Court jurisprudence.

The recent *Urbanimage Media LTD v. IHeartMedia, Inc*. case is instructive. In *Urbanimage Media*, the plaintiff owned the copyright of a photograph of musician Tom Waits. 793 F. Supp. 3d 852, 855–56 (W.D. Tex. 2025). In 2021, the defendant displayed the photograph in a YouTube video that was embedded on the defendant's webpage. *Id*. at 856. Citing a case from the Southern District of New York, the court explained the concept of "embedding" in the context of a webpage:

> "Embedding" an image on a webpage is the act of a coder intentionally adding a specific "embed" code to the HTML instructions that incorporates an image, hosted on a third-party server, onto a webpage. To embed an image, the coder or web designer would add an "embed code" to the HTML instructions; this code directs the browser to the third-party server to retrieve the image. An embedded image will then hyperlink (that is, create a link from one place in a hypertext document to another in a different document) to the third-party website. The result: a seamlessly integrated webpage, a mix of text and images, although the underlying images may be hosted in varying locations. Most social media sites—Facebook, Twitter, and YouTube, for example—provide code that coders and web designers can easily copy in order to enable embedding on their own webpages.

*Id*. at 857–58 (quoting *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 587 (S.D.N.Y. 2018)). It was undisputed that the defendant's website embedded the copyrighted photograph by including the necessary embed code in its HTML instructions, resulting in the photograph appearing on the website even when a reader took no action to retrieve or navigate to the YouTube video. *Id*. at 858. The plaintiff sued for copyright infringement, and the defendant moved to dismiss. *Id*.

The defendant argued that, under the "server test," it did not display the photograph by embedding a video containing the photograph on its website. *Id*. at 860. The court rejected that argument, holding that the "plain text of the Copyright Act, the legislative history behind its enactment, and subsequent Supreme Court Jurisprudence provide no support for the server test, a rule that allows physical location or possession of an image to determine whether a work has been 'displayed' within the meaning of the Copyright Act." *Id*.

The court first noted that, under the Copyright Act, a "display" occurs when a copy of the work is shown "either directly or by means of a film, slide, television image, or *any other device or process*." *Id*. (citing 17 U.S.C. § 101) (emphasis in original). The Act further defines "device or process" as "one now known or later developed." *Id*. at 860–61. It then defines "copy" as a "material object in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with

11

the aid of a machine or device." *Id*. at 861. Thus, "under the plain meaning of the Act, a defendant violates an artist's exclusive right to display a work when the defendant without authorization causes any copy of the work to be seen—whether directly or by means of any device or process available when the Act was enacted or developed thereafter." *Id*. The court also analyzed how the legislative history of the Copyright Act and Supreme Court precedent reveal that the law was intended to respond to significant changes in technology. *Id*. (citing *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 430 (1984) and H.R. Rep. 94–1476, 47, 51, 80 (1976)). Based on these authorities, the court reasoned that "the Act is concerned not with *how* a work is shown, but *whether* a work is shown." *Id*. (emphasis added).

The court also held that the Copyright Act's text conflicts with the Ninth Circuit's server test. *Id*. at 862. That is, under the Act, "a display of a work occurs when it is caused to be seen, regardless of the method of display." *Id*. The "server test" imposes an artificially higher burden on copyright plaintiffs, holding that the display of an image can only occur when an infringer uses "a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory." *Perfect 10, Inc. v. Amazon.com, Inc*. 508 F.3d 1146, 1160 (9th Cir. 2007). As the *Urbanimage Media* court held, "a server-storage requirement adds a condition absent from the Act's plain text." *Urbanimage Media*, 793 F. Supp. 3d at 863. Stated succinctly, "[t]he Act defines to 'display' as 'to show a copy of' a work, 17 U.S.C. § 101, ***not to make, store on its own server, and then show a copy of the copyrighted work***." *Id*. (citation in original; emphasis added).

The Supreme Court's own jurisprudence also appears, though not explicitly, to disagree with the Ninth Circuit's server test. In *Am. Broad. Cos., Inc. v. Aereo, Inc*., 573 U.S. 431 (2014), the Supreme Court rejected the same distinction that the Ninth Circuit made in *Perfect 10*. It reasoned that it "means nothing to the subscriber" whether different technological means were

used to infringe a copyright, as the technology was "invisible to subscriber and broadcaster alike" and by which Aereo "perform[ed] the same work," "show[ed] the same images and ma[de] audible the same sounds." *Id*. at 448.

Although not addressed by the Sixth Circuit, many courts throughout the country have explicitly rejected the Ninth Circuit's server test. *See Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 596 (S.D.N.Y. 2018) (holding that the server test is not "adequately grounded in the text of the Copyright Act."); *McGucken v. Newsweek LLC*, No. 19 CIV. 9617 (KPF), 2022 WL 836786, at *6 (S.D.N.Y. Mar. 21, 2022) (similar); *Leader's Inst., LLC v. Jackson*, No. 3:14-CV-3572-B, 2017 WL 5629514, at *11 (N.D. Tex. Nov. 22, 2017) ("And to the extent *Perfect 10* makes actual possession of a copy a necessary condition to violating a copyright owner's exclusive right to display her copyrighted works, the Court respectfully disagrees with the Ninth Circuit."); *Great Bowery v. Best Little Sites*, No. 2:21-CV-00567-DBB-JCB, 2024 WL 3416038, at *10 (D. Utah July 15, 2024) ("That conclusion is compelled by the text of the Copyright Act, and the court is no longer persuaded by the server test."). The modern trend followed by a majority of courts is to reject the server test.

Finally, the Ninth Circuit decision establishing the server test (*Perfect 10*) is distinguishable on its facts. In that case, the copyrighted images were displayed only if a user clicked on a link. *Perfect 10, Inc*., 508 F.3d at 1157. That is, in 2007, Google's image search engine was not nearly as sophisticated as it is today. Then, a user did not see a complete image when conducting a Google search; he or she would see a "thumbnail." *Id*. at 1155–56. Now, as demonstrated in WW's Complaint, the image shown on Google's website (*i.e*., what is displayed) is a full copy of the WW Designs. *Compare* ECF No. 1 (Compl.) PageID 1–2 ¶ 3, Ex. A *with* ECF No. 1 (Compl.) PageID 10–11 ¶ 34. As in *Urbanimage Media*, the WW Designs appeared on

13

Google's website even when a user took no action to retrieve or navigate to the websites selling knockoff WW shirts. *Urbanimage Media*, 793 F. Supp. 3d at 858. The facts of the case at bar more closely follow those in the *Urbanimage Media* case than those in *Perfect 10*.

Congress did "not intend . . . to freeze the scope of copyrightable technology" to existing methods of expression in 2007. H.R. Rep. 94-1476, 47, 51 (1976). Even after the Ninth Circuit established the server test, courts have found conduct like Google's to be copyright infringement. *See e.g.*, *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 195 (S.D.N.Y. 2021) ("**When a user 'open[s] up a favorite blog or website to find a full color image awaiting the user, whether he or she asked for it, looked for it, clicked on it, or not,' the Ninth Circuit's approach is inapt**."). This Court should follow the growing number of better-reasoned authorities that have rejected the server test. WW has alleged that Google has displayed infringing works. The pictures in the complaint show Google's displays. Whatever "server" the infringing works reside[1] on should be irrelevant. Google displayed infringing works and thus should be held directly liable.

### 2. WW's allegations demonstrate volitional conduct.

Google next argues that WW's Complaint is deficient because it did not plead that Google engaged in any "volitional conduct" that caused the alleged infringement.

As a threshold matter, the Sixth Circuit has not adopted a "volitional conduct" requirement for copyright infringement claims. Nor should this Court read such a requirement into the Act. The Copyright Act never uses the words "volitional conduct." Nor has any Supreme Court majority ever established that a defendant must perform "volitional conduct" to be directly liable. Nor is

---

[1] WWs Complaint does not discuss whether the infringing images are stored on Google's servers, but WW has reason to believe at least some of the infringing images are indeed stored on Google's servers and can amend the Complaint to so allege. However, WW reiterates that doing so is unnecessary because the server test has not been adopted in this Circuit, and there are good reasons—as many courts outside the Ninth Circuit have articulated—to reject the test.

the "volitional conduct" requirement based on sound legal reasoning. *See, e.g.*, David Nimmer, *Volition in Violation of Copyright*, 43 Colum. J.L. & Arts 1, 36 (2019) (the "volitional conduct" doctrine "not only violates the proper method to determine copyright violations, but also contravenes the Supreme Court's 2014 resolution of a copyright infringement case holding an online service provider in violation by virtue of affording access to copyrighted material 'in automatic response' to user requests").

To be sure, often without extensive discussion, non-binding case law—including district court opinions from this circuit—have required some form of volitional conduct by a direct copyright infringer. However, those courts repeatedly emphasize that copyright infringement remains a strict-liability offense. *See*, *e.g.*, *Flowers, Inc. v. Springhill Floral & Gift Supply Co.*, 2025 WL 3003931, at *4 (N.D. Ohio Oct. 27, 2025) ("The volitional conduct requirement does not change that copyright infringement is a strict liability claim;"); *Stokes v. Brinor, Inc.*, 683 F. Supp. 3d 713, 724 (N.D. Ohio 2023) (" . . . as a strict liability offense, lack of knowledge is no defense"); *Kohus v. Graco Children's Prods. Inc.*, 13 F. Supp. 3d 829, 838 (S.D. Ohio 2014) ("Copyright infringement is a strict liability offense; Plaintiff need not demonstrate Defendant's intent to infringe, or even knowledge of infringement, in order to prove copyright infringement") (quoting *Sony BMG Music Entm't v. Willis*, 2008 WL 2120837, *3 (S.D. Ohio May 19, 2008)).

So if a defendant can be liable without any intent to infringe (as even the authorities that reference "volitional conduct" acknowledge), what type of "volition" is required? The authorities that have applied a "volitional conduct" requirement simply "protect[] website owners and internet service providers that merely 'serve as passive conduits for copyrighted material." *Spanski Enterprises Inc. v. Telewizja Polska SA*, 883 F.3d 904, 912 (D.C. Cir. 2018). In other words, the volitional conduct requirement is a judicially created doctrine (albeit without basis in the text of

the Act or Supreme Court case law) that protects an ISP or website that plays no role in the infringement other than hosting a website that allows others to display infringing works.

Google's Shopping Ads program cannot escape liability through the volitional conduct test (even if it is applied) because that program is not a "passive conduit for copyright material." *Id.* Rather, Google digitally locates infringing works on the google site based on the amount of money paid by infringers, including known infringers. Moreover, after being placed on express notice of its display of an infringing work, Google either ignores the notice or attempts to deceives the copyright owner into believing the infringing work has been taken down. The volitional conduct rule is meant to prevent against a "gotcha" claim against a passive intermediary that has no knowledge of  the infringement. But Google is far from the victim of a "gotcha" claim. Google received dozens of takedown notices alerting it to infringement on its site. Google knowingly, deliberately (and at times fraudulently) chose to ignore the notifications and to allow the infringement to continue. Regardless of whether the "volitional conduct" test has any place in copyright law (which, as stated above, is questionable), it certainly does not insulate deliberate participants in copyright infringement like Google via its Shopping Ads program.

Google's lead case for applying the volitional-conduct doctrine on a motion to dismiss, *Tomelleri v. SunFrog*, is critically distinguishable. 721 F. Supp. 3d 566 (E.D. Mich. 2024). Deciding a motion to dismiss a complaint "light on detail," (*id*. at 572), the *Tomelleri* court did "not discuss the Defendants, their business, or their infringing products beyond alleging Defendants were . . . in the business of marketing, promoting, advertising, and selling apparel, and that some merchandise displayed [plaintiff's] copyrighted illustrations or their derivatives;" "indeed, plaintiff's complaint did not specify whether he was asserting direct or secondary copyright infringement against Defendants." *Id.* at 573 (cleaned up). Crucially, "**nor did plaintiff**

**plausibly allege that any Defendant was responsible.**" *Id.* (emphasis added).

Unlike the complaint in *Tomelleri*, the complaint here discusses Google, its Shopping Ads business, and the infringing works displayed via Google's Shopping Ads program. And unlike Tomelleri, WW plausibly alleges that Google is directly responsible for the display of the infringing works, including where and how those infringing works are displayed and whether they continue to be displayed after being notified of the infringing content.

On a full record in another case, the same defendant, SunFrog, was deemed a willful trademark infringer. *See H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1039–41 (E.D. Wis. 2018) (criticizing print-on-demand company for willful infringement for failing to stop repeat infringers despite knowing their identities as a result of numerous takedown notices, even when SunFrog removed the products subject to the notices, because "identical or similar designs popped up again just as quickly, often by the same designers or sellers" and "the removal process frequently took days, despite plaintiff providing direct links to the offending pages;" and noting that even though plaintiff's notices were not literally ignored, "SunFrog failed time and again to develop reforms to its practices that actually addressed the problem in a meaningful way") (cleaned up).

Google's other lead cases for the volitional-conduct doctrine, *Cartoon Network LP v. CSC Holdings, Inc*. and *CoStar Group, Inc. v. LoopNet, Inc*. are likewise readily distinguishable from the case here. Google cites Cartoon Network for the proposition that a company is not liable for direct copyright infringement when its customers "were responsible for making the allegedly infringing copies, while [the company] provided nothing more than an automatic and passive system." ECF No. 16 (Mot.) PageID 231 (cleaned up). But central to the *Cartoon Network* court's reasoning was that "Cablevision has no control over what programs are made available on

individual channels or when those programs will air, if at all." *Cartoon Network LP, LLLP v. CSC Holdings, Inc*., 536 F.3d 121, 132 (2d Cir. 2008).

Here, on the other hand, Google publicly admits that it has complete control over what material appears on its website. As alleged in WW's Complaint, Merchants add product data to their Merchant Center account—a service owned and controlled by Google—and Shopping Ads—another service owned and controlled by Google—uses that data to decide how and where to show the infringing works. ECF No. 1 (Compl.) PageID 9–10 ¶¶ 26–29 (quoting Google's public statements). Google further admits, by having DMCA takedown notification instructions and through its removals@google.com email address, that it has the ability to remove infringing material from its website. *Id*. PageID 10–13 ¶¶ 31–37. WW submitted DMCA takedown notices per Google's instructions, but Google has either ignored or failed to act on those notices, leaving the infringing material displayed for all to view. *Id*. The infringing sellers profit off Google's deliberate choices to leave the infringing designs displayed, incentivizing them to continue to infringe the WW Designs. *Id*. PageID 13–14 ¶¶ 38–40. Google is no mere passive system owner; it is an active, essential participant in the infringement of the WW Designs. Even if the Court is inclined to apply the volitional-conduct doctrine to this case, Google's conduct fits the bill.

Similarly, *in CoStar Group, Inc. v. LoopNet, Inc*., the court stated that LoopNet, an Internet Service Provider ("ISP") was "an analogue to the owner of a traditional copying machine whose customers pay a fixed amount per copy and operate the machine themselves to make copies," which the parties agreed could not be held directly liable for copyright infringement. *CoStar Grp., Inc. v. LoopNet, Inc*., 373 F.3d 544, 550 (4th Cir. 2004). The court found that, although LoopNet acted as a gatekeeper to copyright infringement by screening potential listings for infringing material, it did not play any roll in directing users to a particular infringing work. *Id*. at 555–56.

As stated by the court: "In performing this gatekeeping function, LoopNet does not attempt to search out or select photographs for duplication; it merely *prevents* users from duplicating certain photographs." *Id*. at 556 (emphasis in original). Not so here. Instead, Google plays a much more active role in displaying the infringing content by using Merchant Center data "when we [Google] match a user's search to your ads, making sure to show the most relevant products." ECF No. 1 (Compl.) 9–10 ¶ 27. Google advertises that its Shopping Ads program actively features a Merchant's products, including infringing materials, to potential customers based on data provided by the Merchant as analyzed against a user's Google search. *Id*. PageID 9–10 ¶¶ 26–28. Thus, unlike in *CoStar*, Google actively selects which works to display and how to display them. That can plausibly be described as volitional conduct.

Google's participation in the infringement was not unconscious; it was knowing. Even if the volitional conduct analysis has any place in copyright law (which is questionable as explained above), it has no role in this case.

**B.**     **WW properly alleges that Google engaged in contributory copyright infringement.**

Conspicuously absent from Google's Motion to Dismiss is any mention of the ***actual elements*** of contributory liability for copyright infringement. A defendant is liable for contributory copyright infringement if it "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Playboy Enters., Inc. v. Russ Hardenburgh, Inc*., 982 F. Supp. 503, 514 (N.D. Ohio 1997). As set out by the Sixth Circuit, a plaintiff successfully pleads contributory copyright infringement by alleging: (1) direct copyright infringement; (2) knowledge by the defendant (or reason to know) that the third-party was directly infringing; and (3) the defendant's material contribution to the infringement. *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 816 (6th Cir. 2008).

WW's Complaint meets these basic pleading standards. First, Google does not dispute that WW properly alleges that third-party sellers are engaging in direct copyright infringement. Nor can it. WW's Complaint demonstrates that sellers are using Google's Shopping Ads program to advertise exact copies of the WW Designs. *See* ECF No. 1 (Compl.) PageID 1–4, 10–11 ¶¶ 3–4, 9–10, 30–34. This element of contributory copyright infringement is easily satisfied.

Second, Google similarly does not dispute that it has actual knowledge of the third-party direct infringers. WW alleges that it submitted a DMCA takedown notice for each of the infringing displays. *Id*. PageID 4–5, 10 ¶¶ 11–12, 30–33. Google cannot disclaim actual knowledge of the infringement because Google responded to some of WW's takedown notices via its removals@google.com email address. *Id*. PageID 12–13 ¶¶ 35–37. However, despite possessing actual knowledge of the third-party infringement and promising support, Google failed to remove the infringing advertisements. *Id*. Google accepts these facts as true for purposes of its Motion. *See* ECF No. 16 (Mot.) PageID 229. This element of contributory copyright infringement is satisfied.

Google's sole argument is that WW fails to allege that Google induced or materially contributed to the third-party infringement. *Id*. That argument misses the mark. WW alleges substantial wrongdoing by Google that is a direct cause of the ongoing infringement on Google's website. As alleged in WW's Complaint, Google's Shopping Ads program generates *hundreds of billions* of dollars for the company. ECF No. 1 (Compl.) PageID 9–10 ¶¶ 25, 29. Through that program, Google's customers pay to feature their products in Google-sponsored advertisements. *Id*. ¶ 26. Google takes the data that Merchants provide "to decide how and where to show your ads." *Id*. ¶ 27. Google's ***own public statements*** admit to its conduct: "We'll [Google] use these details when we [Google] match a user's search to your ads, making sure to show the most relevant

20

products." *Id*. In that regard, Google takes direct action that causes infringing material to be presented front and center on Google's website. Further, as admitted by Google, it has actual knowledge that its Shopping Ads platform displays infringing material; it even responded to WW's takedown notices and promised to remove the displays. *Id*. PageID 10–11 ¶ 31–35. But months passed and Google never took down the infringing images. *Id*. PageID 12 ¶ 36. A plausible explanation for Google's conduct is that it knowingly and deliberately refuses to stop third-party copyright infringement in its Shopping Ads program because it simply makes too much money off of it. *Id*. PageID 13–14 ¶ 37–40.

The cases that Google relies on to support its argument are inapposite. *Twitter, Inc. v. Taamneh* and *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos* do not concern copyright infringement at all. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) (Justice Against Sponsors of Terrorism Act); *Smith & Wesson v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025) (illegal trafficking of guns). Cases generally relating to allegations of aiding and abetting a completely different violation of law are irrelevant here, where the Sixth Circuit has prescriptively established the necessary standards for the Court to apply. *Cf. In re Frontier Commc'ns Corp*., 658 B.R. 277, 288 (Bankr. S.D.N.Y. 2024) ("The Court declines to graft an analysis of secondary criminal liability for aiding and abetting *terrorism* onto the well-established branch of law governing secondary liability for *copyright infringement*.") (emphasis in original).

Google's reliance on *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) is entirely misplaced. That case involves technology that is more than forty years old and conduct that is entirely distinguishable from the case at bar. The Betamax video-recording device was completely outside of the defendant's control by the time its customers used it to make unauthorized copies of copyrighted material. *Id*. at 436–439. Here, not only does Google have

complete control over whether to display copyright-infringing works on its own website, it actively fosters copyright infringement by analyzing data and optimizing its search engine to push the infringing material to the top of a potential customer's search results. ECF No. 1 (Compl.) PageID 9–10 ¶¶ 26–29.

Google's reliance on *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913 (2005) fares no better. Google appears to assert that *Grokster* stands for the proposition that only when a company's product is "good for nothing else" but infringement can it be held liable for contributory infringement, but that is not what the Supreme Court held. In *Grokster*, the Supreme Court held that the court below had taken a too-broad view of the Court's ruling in *Sony*. *Id*. at 933–34. The court below read *Sony* to mean that a product creator can never be held contributorily liable for third-party infringement as long as the product is capable of substantial lawful use. *Id*. "This view of *Sony*, however, was error," the Supreme Court held. *Id*. at 934. Instead, "*Sony* did not displace other theories of secondary liability." *Id*. Here, Google is contributorily liable for copyright infringement because it actively fosters third-party infringement by boosting infringing products to the top of a user's search results. ECF No. 1 (Compl.) PageID 9–10 ¶¶ 26–29. That theory of liability survived both *Sony* and *Grokster*, and is fatal to Google's Motion.

Other courts have rejected precisely the argument that Google makes here. For example, in *Frontier*., the defendant-ISP argued, as Google does here, "that *Sony*, *Grokster*, and *Twitter* foreclose any possible secondary liability, because they require culpable conduct that rises above and beyond passive nonfeasance." 658 B.R. 277, 286 (Bankr. S.D.N.Y. 2024), Rejecting this argument, the court held that "[w]illful blindness to flagrant infringement, combined with the continued provision of the essential tools to carry out the infringement, also represents exactly the sort of culpable conduct sufficient for contributory infringement based on material contribution."

*Id*. at 300 (internal quotation omitted). Here, Google ignored WW's DMCA takedown notices, which provided Google with actual knowledge of the third-party infringement, and continues to provide Shopping Ads services to boost infringing products to potential WW customers. This is more than sufficient to impose contributory copyright liability.

## IV.      **ALTERNATIVELY, THE COURT SHOULD GRANT LEAVE TO AMEND**

The Sixth Circuit has established very liberal standards for granting leave to amend following a motion to dismiss. *See Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) (holding that the Federal Rules of Civil Procedure, Rule 15 embodies a "liberal amendment policy."). "[W]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) "The dismissal of existing claims is not, standing alone, a sufficient basis to deny leave to amend." *Dong v. Bd. of Educ. of Rochester Cmty. Schs*., 197 F.3d 793, 804 (6th Cir. 1999); *see also Ellison v. Ford Motor Co*., 847 F.2d 297, 300 (6th Cir. 1988) (holding it is an abuse of discretion to dismiss without considering a pending motion to amend).

Here, should the Court be inclined to grant any portion of Google's motion to dismiss, WW respectfully submits that it should be permitted an opportunity to amend the pleadings to resolve any deficiencies. In particular, WW has reason to believe that at least some of the images depicting the WW Designs reside on Google's servers, and could so allege if necessary.

## V.      **THE COURT SHOULD NOT STAY THE CASE**

The Sixth Circuit has explained that "[a] stay is an intrusion into the ordinary processes of administration and judicial review." *Kentucky v. Biden*, 23 F.4th 585, 593 (6th Cir. 2022) (internal quotation omitted). Thus, a stay is not a matter of right, and "the heavy burden for making out a case for such extraordinary relief rests on the moving part[y]." *Id*. Courts commonly consider the

following factors in deciding whether to stay a case: (1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (4) whether a stay will simplify the issues; and (5) whether the burden of litigation will be reduced for both the parties and the court. *Kirby Devs., LLC v. XPO Glob. Forwarding, Inc.,* No. 2:18-CV-500, 2018 WL 6075071, at \*2 (S.D. Ohio Nov. 20, 2018). These factors weigh against a stay.

Although a ruling in *Cox Communications, Inc. v. Sony Music Entertainment,* 145 S. Ct. 2841 (2025), may simplify some of the issues in this case—*i.e.*, the standards for contributory copyright infringement and willfulness—it will not simplify the standard for WW's claim of direct copyright infringement against Google. In that regard, Google is incorrect when it asserts that the ruling in *Cox* will have a dispositive impact on this litigation. ECF No. 16 (Mot.) PageID 231. Indeed, other courts have denied Google's request for a stay under strikingly similar circumstances. *See, e.g., Cengage Learning, Inc., et al. v. Google, LLC*, Case No. 1:24-cv-04274-JLR-BCM (S.D.N.Y. Aug. 22, 2025), ECF No. 191 at 8 ("[T]he effect of a reversal in *Cox Communications* on Plaintiffs' contributory infringement claim is at best unclear.").

The remaining factors all weigh against a stay. As this case is only at the pleadings stage of litigation, by the time the parties argue whether the evidence meets the standard of proof for contributory copyright liability, *Cox* will have been decided. There is no sense in delaying discovery pending the outcome of that appeal because the discovery that the parties seek is not likely to change, and the parties will be able to argue the applicability of that evidence to the appropriate standard once it is set out. *See id*. ("Even if the Supreme Court adopts a more demanding standard for contributory copyright infringement, requiring that a service provider have 'affirmatively fostered' infringement or 'intended to promote it,' . . . ongoing discovery in this case would still be relevant.").

A stay will prejudice WW. Google continues to infringe the WW Designs, as evidenced by its refusal to take down third-party infringers' advertisements. Every day that Google continues to push third-party infringers' advertisements to the top of Google's website, WW loses revenue to which it is entitled. The only way to get Google to act is if the Court forces it to do so. To stay this case will result in further infringement of the WW Designs. *See id*. at 6–7 (Staying this action would, however, prejudice Plaintiffs, . . . whose works-in-issue continue to be advertised by pirate sellers on the Google Platform.")

For these reasons, WW respectfully requests that the Court decline Google's request for a stay.

## VI.    CONCLUSION

For the foregoing reasons, WW respectfully requests that the Court deny Google's motion to dismiss. In the alternative, should the Court find any of Google's arguments persuasive, WW respectfully request leave to amend its Complaint to address those issues.

Respectfully submitted,

Dated: January 16, 2026

*s/ Daniel Contreras*
Daniel Contreras, *pro hac vice*
Keith J. Wesley, *pro hac vice forthcoming*
George Laiolo, *pro hac vice*
ELLIS GEORGE LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
Email: dcontreras@ellisgeorge.com
Email: kwesley@ellisgeorge.com
Email: glaiolo@ellisgeorge.com

Gary F. Franke
Ohio Bar No. 0029793
GARY F. FRANKE CO., LPA
201 E. Fifth Street, Suite 910
Cincinnati, Ohio 45202

Telephone: (513) 564-9222
Email:  gff@garyfrankelaw.com

*Attorneys for Plaintiff WW Clothing, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2026 a true and correct copy of the foregoing

**PLAINTIFF WEEKEND WARRIOR CLOTHING, LLC'S OPPOSITION TO**

**DEFENDANT GOOGLE, LLC'S MOTION TO DISMISS** was served via the United States

District Court CM/ECF system on all parties or persons requiring notice as follows:

| | |
|---|---|
| Anthony L. Osterlund<br>Alexander X. Shadley<br>Vorys, Sater, Seymour and Pease LLP<br>301 East 4th Street<br>Great American Tower, Suite 3500<br>Cincinnati, OH 45202<br>Phone: (513) 723-4678 (Osterlund)<br>Facsimile: (513) 723-4678 (Osterlund)<br>Phone: (513) 842-8170 (Shadley)<br>Facsimile: (513) 842-8170 (Shadley)<br>Email: alosterlund@vorys.com<br>Email: axshadley@vorys.com<br><br>Sarang V. Damle<br>Sarah Ann Tomkowiak<br>Roberto J. Borgert<br>Brent T.F. Murphy<br>Latham & Watkins LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C. 20004-1304<br>Phone: (202) 637-2200<br>Email: sy.damle@lw.com<br>Email: sarah.tomkowiak@lw.com<br>Email: roberto.borgert@lw.com<br>Email: brent.murphy@lw.com | Counsel for Defendants<br>GOOGLE, LLC |

*s/Daniel Contreras*
Daniel Contreras